Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The facts disclosed by the claimant’s witness, Edwards, his manner of testifying, his relations with the forbidden traffic, and with Gay, leave little room to doubt that, whether the gold was intended to reach Gay’s manual possession or not, it was destined to be used in purchasing cotton in the insurrectionary district. It is conceded that Gay was not a rebel, and was, technically at least, a loyal man. He could easily have come to New Orleans and made oath to his claim for the money, and given his own testimony as to the destination of the gold. It is probable that he, or he and Freeman, alone could have sworn kuowingly on that subject, and his total silence is significant. Other testimony confirms the inference arising from these facts. We are of opinion that the Circuit Court, which heard the case on appeal, was right in holding that the gold was being transported to a place within the rebel lines.
 

 The question is raised whether gold was within the mean
 
 *362
 
 ing of the act of Congress prohibiting the “transportation of goods, wares, or merchandise intended for any place in the possession or.underthe control of insurgents against the United States.”
 

 The 22d Treasury Regulation on this subject expressly forbids all transportation of coin or bullion to any State or section declared to be in insurrection, except for military purposes, under military orders, or under special license from the President; and the question is, was the regulation authorized by the statute ?
 

 The words “ goods, wares, and merchandise of whatever character,” used in the act of 1862, undoubtedly have the same meaning as the words “goods and chattels, wares and merchandise,” in the act of 1861. The word chattel, in its ordinary signification, includes every species of property which is not real estate or freehold,
 
 *
 
 and the words goods, wares, and merchandise are undoubtedly used in this statute to express the same meaning. But if there could under ordinary circumstances be any doubt on this subject, it is a well-known fact, of which this court can surely take cognizance, that in 1864 gold coin was an article of merchandise, and as such was bought and sold at fluctuating prices, and was the object of a large and active traffic. It would be folly to say that the court could not take notice of what all the world besides knew very well; and we must, therefore, hold that gold coin in package, carried from one person to another, and not used for paying travelling expenses, when intended for an insurrectionary'district, was within the prohibition of both the statutes we have cited, as it was beyond doubt within the mischief intended to be prevented.
 

 Some suggestion is made that the final proclamation of amnesty and pardon of the President, of December 25th, 1868, restores to claimant the right of property in this gold, if it had ever been forfeited. But general as the terms of that proclamation are, it is by those terms limited to persons who “participated in the late insurrection or rebellion,” and
 
 *363
 
 the offences which are pardoned are declared to be “ treason against the United States, or adhering to their enemies during the late civil war.” As there is no pretence that Gay, the claimant, was one of the persons thus described, or was guilty of, or charged with, the offence which was pardoned, the proclamation can have no application to him or to the present case.
 

 Decree oe the Circuit Court aeeirmed.
 

 *
 

 2 Kent, 342.