HELM et al. v. ZARECOR et al.†

(District Court, M. D. Tennessee, at Nashville. July 24, 1913. On Petition for Rehearing, September 20, 1913.)

No. 3590.

1. EQUITY (§ 97*)—JURISDICTION OF FEDERAL COURTS—INDISPENSABLE PARTIES—CLASS SUIT.

A suit by members of the Presbyterian Church in the United States of America, on behalf of themselves and all other members, against individuals who are members of the Cumberland Presbyterian Church, as representing all of such members who refuse to recognize the union between said churches in 1906, and claim that the Cumberland Presbyterian Church is still a separate association, with all its original rights and powers, and also against the Board of Publication of the Cumberland Presbyterian Church, which is a corporation created by such church as an agency to hold property and conduct its publishing business, for the purpose of obtaining a decree that the united church has become vested with the right to use and control the corporation and its property

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Published by request.

in denominational work, and declaring the trust upon which such property is held, and the uses and purposes for which it is to be administered, is a class suit, and the members of the Board of Publication appointed by the Cumberland Presbyterian Church before the attempted union, or since that time, are not indispensable parties, whose nonjoinder either as plaintiffs or defendants will defeat the jurisdiction of a federal court of equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 257; Dec. Dig. § 97.*]

2. JUDGMENT (§ 701*)—RES JUDICATA—IDENTITY OF ISSUES.

The question involved in such suit is not res judicata because of an adjudication in a state court in quo warranto proceedings between rival appointees to determine who were the lawful directors of the corporation, which ousted the incumbents and installed the relators, as such judgment affected only the individual rights of the parties to the offices and was binding on them only.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1226; Dec. Dig. § 701.*]

3. JUDGMENT (§ 675*)—PERSONS CONCLUDED—ASSISTANCE IN DEFENSE.

Although a person assists in the defense of a suit against another because of his individual interest in the decision as a judicial precedent, the result as to him is merely that of precedent, and not of res judicata, and no estoppel is created against him because of his assistance in the defense.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1190, 1191, 1194; Dec. Dig. § 675.*]

4. COURTS (§ 365*) — FEDERAL COURTS — AUTHORITY OF DECISIONS OF STATE COURTS.

A decision of the Supreme Court of a state as to the validity of an attempted union between two church organizations is not binding on a federal court sitting in the state, in a suit where the parties are not such as to render the question res judicata, where the rights of the parties were fixed prior to such decision, and no rule of property had been established by repeated decisions of the state tribunal and in determining such rights the federal court is required to exercise its independent judgment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. § 365.*]

5. RELIGIOUS SOCIETIES (§ 34*)—UNION OF CHURCHES—LEGALITY.

The union between the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, effected in 1906, was a valid union, not in conflict with the constitution of the Cumberland Presbyterian Church, lawfully entered into by its General Assembly in the exercise of its implied authority, and not involving any such differences in the doctrine and polity of the two churches as to constitute an insuperable barrier to the union, as conclusively determined by their General Assemblies, their highest legislative and judicial tribunals.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 209–211; Dec. Dig. § 34.*]

In Equity. Suit by T. O. Helm and others against J. H. Zarecor and others. On final hearing. Decree for complainants.

See, also, 222 U. S. 32, 32 Sup. Ct. 10, 56 L. Ed. 77.

This bill, as amended, was brought in the United States Circuit Court for this district in April, 1909, by certain ministers, ruling elders and laymen, of the Presbyterian Church in the United States of America, citizens of states other than Tennessee, suing for themselves and for all the members of said church, against individuals, citizens of Tennessee, described as representing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not only their own interests but also those of all the members of the Cumberland Presbyterian Church, and "The Board of Publication of the Cumberland Presbyterian Church," a Tennessee corporation.

The controversy disclosed by the bill arose from the proceedings, taken in 1906, to effect the union of the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, both voluntary religious associations, and relates to the property and management of the defendant corporation. The Board of Publication had been incorporated in 1860, under the direction of the General Assembly of the Cumberland Presbyterian Church, for the purpose of conducting its publishing work, and had acquired valuable property consisting of a publishing house and its equipment in Nashville, Tennessee. The original members of the corporation were the committee of publication of the Church, and their successors under the charter were appointed by the General Assembly to which was committed its regulation and control. The bill alleged that the two Churches had been legally united and that as a result the property in question was held by the corporation in trust "for the entire reunited denomination"; and, further, that "the Board and its officers and managers were advised and believed and still believe" that the union was valid, that "thereby the Board of Publication became a corporation and institution of the reunited Church," and that the managers of the corporation "could do nothing else than recognize the General Assembly of the united Church by reporting to it and otherwise recognizing its authority." It was also alleged that a minority of the members of the Cumberland Presbyterian Church, and of its ministers, who were opposed to the consolidation, repudiated it and effected a separate organization under the former name; that thereupon a body assuming to be the General Assembly of the Cumberland Presbyterian Church declared the offices of all the members of the Board of Publication vacant and proceeded to elect persons of their own organization to fill the supposed vacancies; that these persons had made demand for the possession of the corporate property, claiming to be the rightful members of the corporation and that its property was held in trust for the religious association by whose General Assembly they had been elected; and that this claim cast a cloud upon the equitable title to the property. After reviewing at length the history of the Cumberland Presbyterian Church, the action of the representatives of the two Churches which culminated in the alleged consolidation, and the subsequent antagonistic proceedings, the bill prayed for decree that the property in question is held in trust by the corporation for the benefit of the Presbyterian Church in the United States of America or the members thereof, and that the members of the Board elected by the reunited Church are the true and lawful members of said Board; that the defendants be enjoined from interfering with the control and management of the corporation by those members or with the corporation property, and that if mistaken with respect to the relief prayed for as to the persons who constitute the Board and have the right of management, the court should decree that "whoever may be the members of the Board and whoever may be entitled to such management, they shall manage the corporation and administer the trust for the use and benefit of said reunited Church."

The defendants filed two pleas to the jurisdiction. In the first plea it was alleged that the complainants had collusively made and omitted both complainants and defendants for the purpose of showing the requisite diversity of citizenship. The second plea set up the pendency of a suit in the Chancery Court of Davidson County, Tennessee, in the nature of a quo warranto proceeding, brought on the relation of J. H. Zarecor and other individual defendants herein to oust those named as defendants in that suit from membership in the Board of Publication, and from the control and management of its property and to install the relators in their stead.

The court overruled both of these pleas, but of its own motion dismissed the bill for want of jurisdiction, on the ground that the defendant corporation, the Board of Publication, should be aligned upon the same side of the controversy with the complainants, thereby destroying the requisite diversity of citizenship. On appeal to the Supreme Court on the jurisdictional question involved, it was held that the court had correctly overruled the defendants' pleas to the jurisdiction, but had erred in dismissing the bill for want of

jurisdiction. Helm v. Zarecor, 222 U. S. 32, 32 Sup. Ct. 10, 56 L. Ed. 77. The case was therefore remanded for further proceedings; after which answers were filed by the defendants and proof taken.

John M. Gaut, of Nashville, Tenn., and Alex P. Humphrey, of Louisville, Ky., for plaintiffs.

W. C. Caldwell, of Trenton, Tenn., W. B. Lamb, of Fayetteville, Tenn., and Frank Slemmons, of Nashville, Tenn., for defendants.

SANFORD, District Judge. This case was heard upon the pleadings, stipulations and depositions before the new equity rules went into effect. I have been greatly assisted in the consideration of the important and difficult questions involved by the thorough briefs of counsel upon both sides and by the oral arguments made upon the hearing, to all of which I have given careful consideration. In view, however, of the number of questions involved and the fact that many of them have been already passed upon by the courts of various States in similar litigation arising out of the same unfortunate controversy between the two contending churches, and the fact that the reasons supporting the divergent views which have been entertained have been clearly expressed in several published opinions, I shall not, in this opinion, set out at length the reasons which have led me to the conclusions reached or discuss the many authorities cited in the briefs, but shall merely state my conclusions upon the several questions involved, with citation of the principal authorities bearing upon them, without elaboration.

The conclusions which I have thus reached are as follows:

[1] The first contention of the defendants is that W. A. Provine and his associates, originally appointed as members of the Board of Publication of the Cumberland Presbyterian Church, are necessary and indispensable parties to the suit, and that it hence cannot be proceeded with without them.

It is well settled that persons who have an interest in a controversy of such a nature that a final decree cannot be made without affecting their interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience, are indispensable parties. Shields v. Barrow, 17 How. 130, 139, 15 L. Ed. 158; Barney v. Baltimore City, 6 Wall. 280, 284, 18 L. Ed. 825. And where the interest of the parties present and of absent indispensable parties are inseparable and such absent parties do not voluntarily appear, or from a jurisdictional objection going to the person in the United States courts they cannot be made parties, the bill must be dismissed. Ribon v. Railroad Co., 16 Wall. 446, 450, 21 L. Ed. 367; Gregory v. Stetson, 133 U. S. 579, 587, 10 Sup. Ct. 422, 33 L. Ed. 792; Construction Co. v. Cane Creek, 155 U. S. 283, 285, 15 Sup. Ct. 91, 39 L. Ed. 152. It is also true that where the plaintiff in a suit is seeking to recover the possession of property, the person in possession is a necessary and indispensable party. Construction Co. v. Cane Creek (U. S.) at page 283, supra, citing Wilson v. Oswego Township, 151 U. S. 56, 14 Sup. Ct. 259, 38 L. Ed. 70.

However, in Helm v. Zarecor, 222 U. S. 32, 36, 32 Sup. Ct. 10, 12

(56 L. Ed. 77) in an opinion upon the jurisdictional question involved in the present case, the Supreme Court of the United States said:

"The complainants sue for themselves and on behalf of all members of the Presbyterian Church in the United States of America, and the object of their suit is to enforce the right of the members of that Church as it was constituted after the alleged union. The Board of Publication was incorporated merely as a convenient agency for the publishing work of the Cumberland Presbyterian Church. * * * It was an incorporated committee of publication, which lost none of its essential qualities as an agent of denominational service when it became an artificial person, clothed with power to hold property in a corporate capacity. * * * The contention of the complainants is that, after the union, the Cumberland Presbyterian Church continued in the united Church and that the General Assembly of the latter succeeded to the authority formerly possessed by the General Assembly of the separate denomination. The defendants are sued as the representatives of the religious association which insists that it is still the original Cumberland Presbyterian Church, continuing with all its separate powers unimpaired. It is thus evident that the controversy transcends the rivalries of those claiming membership in the Board and the assertion of rights inhering in that corporation itself. It embraces the fundamental question of the rights of these religious associations, said to be represented by the respective parties, to use and control the corporate agency and to have the benefit in their denominational work of the corporate property. * * * The Board is simply a title holder, Watson v. Jones, 13 Wall. 679, 720 [20 L. Ed. 666] an instrumentality, the mastery of which is in dispute. But, as it is the holder of the legal title, the complainants seek a decree defining, in the light of the proceedings alleged in the bill, the equitable obligations arising from the nature and purpose of the corporate organization."

In the light of this decision this suit must therefore be held to be a class suit, brought by representatives of the Presbyterian Church of the United States of America against representatives of the original Cumberland Presbyterian Church, to determine the fundamental question of the rights of these two religious associations to use and control the Board of Publication and have the benefit in their denominational work of its corporate property, and to define the equitable obligations arising from the nature and purpose of the corporate organization. And as suitable representatives of each of these two religious associations are before the court in their representative character as members of the respective churches, and as the Board of Publication, which is the holder of the legal title to the property and whose equitable obligations are sought to be defined, is before the court, I am constrained to hold that, for the purpose of determining the fundamental question presented by the bill, as stated by the Supreme Court, it is only necessary that suitable representatives of each of these two religious associations be made parties complainant and defendants respectively, and that it is not essential that the rival members of the Board of Publication be made parties, either as complainants or defendants, in their capacity as such. And while I am of opinion that the presence of the members of the original board would be essential in order that they might be decreed to be the true and lawful members of said Board, and that no decree declaring them to be the true and lawful members of said Board could be properly made without their presence, yet their presence is clearly not essential for the purpose of granting the main relief prayed by the bill, as construed by the decision of the Supreme Court that the controversy presented transcends the rivalries

of those claiming membership in the Board and embraces the fundamental question of the rights of the two religious associations to use and control the corporate agency and have the benefit in their denominational work of the corporate property; nor, in the light of the opinion of the Supreme Court, is their presence necessary, as I view it, to a decree defining the equitable obligations arising from the nature and purpose of the corporate organization of the Board of Publication.

For similar reasons I am of opinion that the second objection made by the defendants, namely, that A. C. Biddle, a member of the rival Board of Publication appointed by the Cumberland Presbyterian Association in May, 1907, is not a necessary and indispensable party. While I think that the said Biddle would be a necessary and indispensable party to any decree adjudging who were the lawful members of the Board of Publication, I must conclude that he is not an indispensable party to the determination of the fundamental question involved in the bill as it has been construed by the Supreme Court.

[2] The main issue thus presented by the bill is not, in my opinion, res adjudicata by reason of the adjudication in the quo warranto proceedings in the case of State ex rel. v. W. A. Provine et al. Those proceedings were pending in the Chancery Court of Davidson County, Tennessee, when the second plea to the jurisdiction was filed, and were set up and relied upon in said plea. In passing upon this plea in my memorandum opinion of March 26, 1910, I said:

"Obviously the bill goes further than to seek merely a decree as to who are the true and lawful members of the corporation, which is the only matter involved in the above named quo warranto proceedings, and seeks a decree broadly declaring the trust upon which the property of the corporation is held, and the use and purpose for which it is to be administered by such persons as may be its true and lawful members."

In Helm v. Zarecor (U. S.), supra, the Supreme Court said:

"The second plea was overruled because it did not reach the whole case made by the bill, as the bill did not merely ask a determination as to the persons who were the true and lawful members of the corporation, which was the only matter involved in the quo warranto proceeding in the state court, but sought a decree declaring the trust upon which the property of the corporation is held and the uses and purposes for which it is to be administered, whoever might be found to be the true and lawful members of the corporation. We need add nothing to what was said by the court below upon these points."

The purpose of this quo warranto proceeding, as appears from the bill and the prayer for relief, was merely "for the purpose of ousting the defendants (Provine and others) from the offices of members of the Board of Publication of the Cumberland Presbyterian Church and installing the relators (Zarecor and others) in their room and stead." It was brought by the State on the relation of Zarecor and others against the defendants Provine and others. It affected merely the right of the relators, on the one hand, and the defendants, on the other, to hold offices as members of the Board of Publication. It did not purport to be brought as a class suit by the relators as representatives of their religious association against the defendants as representatives of their religious association, to declare the uses and purposes for

which the corporate property was held, but was merely a suit brought for the purpose of determining the single question as to whether the relators or the defendants were entitled to hold office as members of the Board. It is true that the decree of the Supreme Court of Tennessee, sustaining the bill, contained the introductory recital that it appeared that the proceedings taken in 1906 to effect the union of the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America were not effective to merge the Cumberland Presbyterian Church into the Presbyterian Church U. S. A., and that the Cumberland Presbyterian Church still remained a vital and independent organization, and that the relators were identified therewith and had been duly elected directors of the Board of Publication of the Cumberland Presbyterian Church, and the defendants had been removed, and were diverting the trust property from the uses and purposes for which it was placed in their hands. However, after this preliminary recital, the order, judgment and decree of the court merely was that the defendants were not entitled to hold the offices of Directors of the Board of Publication, and that the relators were so entitled, and therefore that the defendants be removed from their said offices as Directors of the Board, and that the relators be installed as members of said Board; with a further provision directing the surrender of the corporate property and other matters not here material. On the whole I think it clear that this decree cannot properly be regarded as made in a class suit between representative members of the two religious associations; that its effect as a prior adjudication must be limited to the adjudication, as between the parties themselves, that the relators were lawful members of the Board of Publication entitled to hold office as such in lieu and instead of the defendants; and that the introductory recitals contained in the decree, stating the reasons which led the court to its conclusion, cannot properly be held as binding upon the two religious associations respectively, as they might perhaps have been if made in a class suit between representatives of the two associations by the result of which all members in each were bound.

[3] Nor does the Presbyterian Church in the United States of America appear to be bound by this decree by any participation which its Philadelphia Board may have taken in bearing the expenses of this litigation in behalf of Provine and others or any action taken by its General Assembly. Although a person individually interested in the result of a suit against another assists in its defence, because of interest in the decision as a judicial precedent, the result as to him is merely that of precedent, and not of res adjudicata, and no estoppel is created against him by assisting in such defence. Bigelow v. Old Dominion Copper Co., 225 U. S. 111, 32 Sup. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875. And while the decree in State ex rel. v. Provine would apparently be res adjudicata binding on all of the parties to that suit, either as relators or defendants, which, even if the necessary parties were before the court, would now bar any decree ousting the defendants Zarecor and his associates as members of the Board of Publication and re-instating Provine and his associates in their room and stead, I do not think that, in accordance with the opinion of the Supreme Court, it can operate as a bar to the complainants' rights, if

otherwise established, to a decree declaring in this class suit, the trust upon which the property of the corporation is held and the uses and purposes for which it is to be administered, whoever may be the true and lawful members of the corporation. And see Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666.

For like reasons I conclude that the decree of the Supreme Court of Tennessee in State ex rel. v. Provine et al. is not conclusive upon this court as a construction of the Tennessee statute creating the Board of Publication further than relates to the specific point in controversy in that suit, to-wit, that under that charter the relators were the lawfully elected members of the Board and entitled to hold office as such in lieu and instead of Provine and his associates.

[4] The decision of the Supreme Court of Tennessee in Landrith v. Hudgins, 121 Tenn. 556, 120 S. W. 783, rendered in April, 1909, a few days before the present bill was filed, in which the invalidity of the church union upon which the complainants predicate their rights, was adjudged, and the four subsequent decrees of the Supreme Court of Tennessee, rendered after the present bill was filed, in First Cumberland Presbyterian Church v. Keith, Ridings v. Bowen's Chapel Congregation, State ex rel. v. Provine, and Bonham v. Harris, 125 Tenn. 452, 145 S. W. 169, in at least three of which the doctrine of Landrith v. Hudgins was expressly reaffirmed, do not, in my opinion, constitute a rule of property in Tennessee controlling in the present case.

In Bucher v. Railroad Co., 125 U. S. 555, 584, 8 Sup. Ct. 974, 978 (31 L. Ed. 795) the court said:

"It may be said generally that wherever the decisions of the state courts relate to some law of a local character, which may have become established by those courts, or has always been a part of the law of the State, that the decisions upon the subject are usually conclusive, and always entitled to the highest respect of the Federal courts. The whole of this subject has recently been very ably reviewed in the case of Burgess v. Seligman, 107 U. S. 20 [2 Sup. Ct. 10, 27 L. Ed. 359]. Where such local law or custom has been established by repeated decisions of the highest courts of a State it becomes also the law governing the courts of the United States sitting in that State."

And in Kuhn v. Fairmont Coal Co., 215 U. S. 349, 360, 30 Sup. Ct. 140, 143 (54 L. Ed. 228), in which Burgess v. Seligman (U. S.), supra, and Bucher v. Railroad (U. S.), supra, were reviewed, the court said that

"it is no longer to be questioned that the Federal courts in determining cases before them are to be guided by the following rules: 1. When administering state laws and determining rights accruing under those laws the jurisdiction of the Federal court is an independent one, not subordinate to but coordinate and concurrent with the jurisdiction of the state courts. 2. Where, before the rights of the parties accrued, certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the State, those rules are accepted by the Federal court as authoritative declarations of the law of the State. 3. But where the law of the State has not been thus settled, it is not only the right but the duty of the Federal court to exercise its own judgment, as it also always does when the case before it depends upon the doctrines of commercial law and general jurisprudence. 4. So, when contracts and transactions are entered into and rights have accrued under a particular state of the local decisions, or when there has been no decision by the state court on the particular question involved, then the Federal courts properly claim the right to give effect to their own

judgment as to what is the law of the state applicable to the case, even where a different view has been expressed by the state court after the rights of parties accrued.".

And see Louisville Trust Co. v. Cincinnati, (6th Circ.) 76 Fed. 296, 301, 22 C. C. A. 334.

In accordance with the foregoing cases I am constrained to hold that the decision in Landrith v. Hudgins, 121 Tenn. 556, 120 S. W. 783, which was rendered only a few days before the filing of the bill in this case, is not conclusive upon this court as a rule of property, for two reasons: First, because the rights of the two religious associations in the property involved in this controversy depend upon the union of the churches made in 1906, more than three years before this decision was rendered; and, second, because this single decision in Landrith v. Hudgins, which was the only decision that had then been rendered by the Supreme Court of Tennessee on the broad question herein involved, to-wit, the validity of this union, had not, even at the time that this bill was filed, been so established by repeated decisions of the Supreme Court of the State as to become a rule of property binding upon the Federal court. Nor do I find that any rule of property involving in any way the question of the validity of the church union in controversy, is established by the decisions in Bridges v. Wilson, 11 Heisk. (Tenn.) 458, and Rodges v. Burnett, 108 Tenn. 173, 65 S. W. 408.

[5] The union between the Cumberland Presbyterian Church and the Presbyterian Church of the United States of America, as effected in 1906, whether termed a union, re-union, merger or absorption, was, in my opinion, a valid union, not in conflict with the constitution of the Cumberland Presbyterian Church, lawfully entered into by its General Assembly in the exercise of its implied authority, and not involving any such difference in the doctrine and polity of the two churches as to constitute an inseparable legal barrier to the union, as conclusively determined by its General Assembly, its highest legislative and judicial tribunal.

As to the validity of this union there has been a direct conflict of authority. On the one hand it has been held invalid by the Supreme Courts of two States, in the following reported cases: Landrith v. Hudgins, 121 Tenn. 556, 120 S. W. 783 (1909); Boyles v. Roberts, 222 Mo. 613, 121 S. W. 805 (1909); and Bonham v. Harris, 125 Tenn. 452, 145 S. W. 169 (1911). On the other, it has been held to be valid by the Supreme Courts of nine States, in the following reported cases: Mack v. Kime, 129 Ga. 1, 58 S. E. 184, 24 L. R. A. (N. S.) 675 (1907); Wallace v. Hughes, 131 Ky. 445, 115 S. W. 684 (1909); Brown v. Clark, 102 Tex. 323, 116 S. W. 360, 24 L. R. A. (N. S.) 670 (1909); Permanent Committee of Missions v. Pacific Synod, 157 Cal. 105, 106 Pac. 395 (1910); Ramsey v. Hicks, 174 Ind. 428, 91 N. E. 344, 92 N. E. 164, 30 L. R. A. (N. S.) 665 (1910), reversing Ramsey v. Hicks, 44 Ind. App. 490, 87 N. E. 1091, 89 N. E. 597; First Presbyterian Church v. First Cumberland Presbyterian Church, 245 Ill. 74, 91 N. E. 761 (1910); Sanders v. Baggerly, 96 Ark. 117, 131 S. W. 49 (1910); Harris v. Cosby, 173 Ala. 81, 55 South. 231 (1911); and Carothers v. Moseley, 99 Miss. 671, 56 South. 881 (1911). Its validity has also been recently sustained by the United States District Court for the Western

District of Tennessee, in the case of Sherard v. Walton (D. C.) 206 Fed. 562.

Without referring in detail to the various objections to the validity of the union, which are urged with great clearness and force in the briefs submitted in behalf of the defendants, a full discussion of which would carry this opinion to undue length, it is sufficient for present purposes to say, that, after careful consideration of the foregoing cases, I am constrained to conclude that not only the weight of authority but the sounder reasoning is on the side of those cases in which the union has been held to be valid. The reasons leading to that conclusion are stated so fully in the cases in which the union has been upheld, especially in Wallace v. Hughes, Ramsey v. Hicks, Sanders v. Baggerly, and First Presbyterian Church v. First Cumberland Presbyterian Church, supra, that I deem it unnecessary to repeat them here. The corner stone upon which these opinions are, in my judgment, to be based, is the decision in Watson v. Jones (U. S.), supra, in which, after careful consideration, it was held by the Supreme Court of the United States that where in a controversy in a civil court, the property rights of a religious organization is dependent upon a question of doctrine, discipline, ecclesiastical law, rule, custom or church government that has been decided by the highest tribunal within the organization to which it has been carried, the civil court will accept that decision as conclusive, and will be governed by it in its decision of the case before it. This rule was followed by the Supreme Court of Tennessee in Nance v. Busby, 91 Tenn. 303, 326, 18 S. W. 874, 879 (15 L. R. A. 801), in an opinion delivered by Judge Lurton (now Mr. Justice Lurton), in which "the great case of Watson v. Jones" was cited and expressly followed. It is also the rule which has been followed by the Circuit Court of Appeals for this circuit in Brundage v. Deardorf (6th Cir.) 92 Fed. 214, 34 C. C. A. 304. And this is not only the established rule in the Federal courts, but is, in my opinion, as clearly appears from the cases above cited, the rule supported by the great weight of authority in the State courts as well.

And while under the doctrine of Burgess v. Seligman and Kuhn v. Coal Co., supra, it would undoubtedly be the duty of this court, for the sake of comity and to avoid confusion, to lean to an agreement with the State court where a question of this character is balanced with a doubt, the Federal court, on the other hand, as stated in Kuhn v. Coal Co., "would not only fail in its duty, but would defeat the object for which the national courts were given jurisdiction of controversies between citizens of different States, if, while leaning to an agreement with the State court, it did not exercise an independent judgment in cases involving principles not settled by previous adjudications." And the duty of thus exercising an independent judgment is rendered the plainer in the present case by reason of the fact that, in my judgment, the decision in Landrith v. Hudgins is not only in conflict with the doctrine of Watson v. Jones, but in conflict with the earlier decisions of the Supreme Court of Tennessee in Nance v. Busby, supra, in which Watson v. Jones had been followed. And I may add that in the last of the cases in which this question came before the

Supreme Court of Tennessee, namely, Bonham v. Harris, supra, while Landrith v. Hudgins was followed by a majority opinion, Lansden, J., in concurring, expressed (125 Tenn. 466, 145 S. W. 172) in clear and forceful language his reason for believing that Landrith v. Hudgins "was decided contrary to the great weight of authority, and is unsound upon principle," though believing that it should be then followed by the Supreme Court of Tennessee on the principle of *stare decisis;* while Green, J., expressly dissented (125 Tenn. 470, 145 S. W. 173) on the ground that he could not agree that Landrith v. Hudgins made "a proper disposition of this unfortunate controversy," and that he believed "the case should be overruled." In this connection he said:

"In Landrith v. Hudgins this court undertakes to review a decision of a high ecclesiastical tribunal of competent jurisdiction passing upon points of church faith and doctrine. The opinion undertakes a comparison of creeds, and discovers doctrinal differences, which learned theologians officially declared did not exist. Landrith v. Hudgins commits this court to a policy that will, in my judgment, always prove embarrassing, and compel us to review and overhaul every sectarian or intersectarian dispute that may hereafter arise, if, perchance, so-called property rights are involved. This, too, although such matters have been formally and regularly determined by the judicatories organized and empowered by the disputants themselves to settle such differences. The true rule is that the civil courts shall accept as conclusive the determination of the proper ecclesiastical authority in these controversies. It was so held formerly in Tennessee, in Nance v. Busby, 91 Tenn. 328, 18 S. W. 874, 15 L. R. A. 801. It was so held in Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666, by the Supreme Court of the United States. It is so held by all the late decisions, except in Tennessee and Missouri, and this rule applied to this particular controversy by the courts of Georgia, Texas, Kentucky, Arkansas, Alabama, Illinois, Indiana, Mississippi, California, and perhaps others. So that Landrith v. Hudgins is out of line with our own decisions, with the Supreme Court of the United States, and with the practically unbroken current of modern authority."

And in the note to Ramsey v. Hicks, supra, 30 L. R. A. (N. S.) 666, the editor says:

"In spite of the contrary conclusion reached in Missouri and Tennessee and by the Indiana Appellate Court and by the dissenting judges in some of the other cases, it is apparent that the weight of authority sustains the validity of the union or re-union as affecting property rights. Doubtless, the reluctance of the court to throw any obstacle in the way of church unity would in any event dispose them to obviate, if possible, the effect of merely technical objections. But in view of the broad principles laid down by the United States Supreme Court in Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666, and especially the principle that the civil courts, in the disposition of property rights depending indirectly upon the decision of an ecclesiastical tribunal, will accept that decision as conclusive, without re-examining its merits in the light of church history or polity, it would seem that the conclusion of those courts in upholding the union is abundantly fortified by legal precedent."

I am of opinion that the evidence upon the issue of fraud in the procurement of the union is insufficient to impeach the validity of the union. It is well settled that a court cannot set aside the action of a legislative body on the ground of fraud perpetrated on the part of its members. Williams v. Nashville, 89 Tenn. 487, 15 S. W. 364. Furthermore, without reciting the evidence in detail, it is sufficient to say that it does not, in my opinion, make out a case of fraud or necessarily show that the result was effected by the means complained of.

It results that, in my opinion, the complainants are entitled to a decree adjudging in behalf of themselves and all other members of the Presbyterian Church in the United States of America, as against the defendants and all other members of the Cumberland Presbyterian Church, that the property of the defendant corporation, the Board of Publication, is held in trust for the use and benefit of said Presbyterian Church in the United States of America, which is entitled to its use and control and to have its benefit in its denominational work, and that the individual defendants and any and all other persons who may be members of said Board and entitled to its management, shall manage said corporation and administer its property in trust for the use and benefit of said Presbyterian Church in the United States of America; and to a decree against the defendants for all costs of the cause not heretofore adjudged.

For the reasons above indicated, however, the complainants are not, in my opinion, entitled to a decree determining what persons are now the true and lawful members of the said Board of Publication or to any other relief prayed by the bill than as above stated.

A decree will be entered accordingly.

## On Petition for Rehearing.

I have carefully considered the petition for rehearing filed by J. H. Zarecor and other petitioning defendants, and am of opinion that the prayer of the petition for rehearing should be denied.

I do not think that the entire membership of both the Presbyterian Church of the United States of America and the Cumberland Presbyterian Church are shown to have had any such interest in the specific church property involved in Landrith v. Hudgins as to make that suit properly a class suit binding on members of both churches throughout the United States, or upon any other persons than members of the particular church whose property was in question therein, and in reference to the beneficial ownership of such property.

Furthermore the defendants' contention in reference to the effect of the quo warranto proceedings cannot be sustained in the light of the construction placed upon the issues in said quo warranto proceedings in the opinion of the Supreme Court of the United States in Helm v. Zarecor, 222 U. S. 32, 32 Sup. Ct. 10, 56 L. Ed. 77, and for the reasons heretofore stated in my former opinion.

The prayer of the petition for a rehearing must accordingly be denied.