### UNITED STATES v. BARNARD.

### Civ. No. 898.

District Court, W. D. Tennessee, W. D.
July 22, 1947.

John Brown, Asst. U. S. Atty., of Memphis, Tenn., Chas. R. McNeill, Atty. for Treasury Department, of Washington, D. C., for plaintiff.

Frank J. Glankler, of Memphis, Tenn., and Harry J. Stein, of New York City, for defendant.

BOYD, District Judge.

This action, in the nature of a replevin, was brought by the United States of America to recover from the defendant a $20 Gold Piece of the United States, commonly called a "Double Eagle", bearing date of the year 1933.

The coin in question was purchased in the year 1944 for $900, by the defendant, a member of the American Numismatic Association, from one Bell, who was also a collector of rare and unusual coins.

The plaintiff contends the coin in dispute was lawfully minted by the United States Mint at Philadelphia, but was never lawfully issued or put in circulation as money, and never became currency or legal tender of the United States; that said coin, never having been lawfully issued as money, or currency, was a chattel, or an article of virtu, at the time it left the Mint and thereafter, and the defendant, though a bona fide purchaser, acquired no title in the purchase of same against the United States Government, the rightful owner. Plaintiff alleges the coin was illegally taken from the Mint upon substitution of a like coin of another year.

. The defendant denies plaintiff is entitled to have the coin returned to it, asserting that he is a collector of rare and unusual coins and, as such, purchased this one from another collector in good faith, in due course of trade and without knowledge that it had been stolen or surreptitiously taken from the Mint if it had, in fact, been so stolen, or taken. He claims the coin in controversy was lawfully minted as United States money, or currency, was issued as such, and is not a chattel, or an article of virtu; further, that regardless of the manner in which the coin left the Philadelphia Mint, it was complete on its face, negotiable and transferable by delivery, and his right, title and interest in same is superior to any claim or title of the plaintiff.

On these issues the decisive question, in the Court's opinion, is whether the coin in dispute, after having been minted, was is-

sued as money or currency of the United States, or whether the status of the same was that of a chattel, or an article of virtu.

The proof is that the United States Government minted 445,500 Double Eagle coins at its Philadelphia Mint during the period between March 15, 1933, and May 19, 1933; that such coin could only be issued and circulated legally by the Philadelphia Mint, upon receipt by said Mint of an order from the Treasurer of the United States; that the Mint did not, at any time, receive such an order except one to deliver two of these coins to the Smithsonian Institute. In addition to the two coins sent to the Smithsonian Institute, twenty-nine others were destroyed by testing and by the Assay Commission, leaving 445,469 Double Eagle coins for the year 1933 on hand at the Philadelphia Mint when they were later ordered melted into bullion. The remaining Double Eagle coins were carefully and meticulously weighed before and after they were melted and the weight of same, following the melting process at the Mint, equalled the weight of these coins prior thereto.

Restrictions on all gold became operative in the early part of 1933, when, on March 6, 1933, the President of the United States proclaimed a "Bank Holiday" during which all banks were prohibited from paying out gold coin. On the same date, the Secretary of the Treasury, with Presidential approval, issued instructions to the Director of the Mint and the Treasurer of the United States to make payments in gold coin only under license issued by the Secretary of the Treasury. On April 5, 1933, the President of the United States issued Executive Order No. 6102 requiring the delivery to the United States of all gold coin with the exception of gold coin and gold certificates in an amount not exceeding, in the aggregate, $100, and gold coin having a recognized special value to collectors of rare and unusual coins. The President of the United States, on August 28, 1933, issued Executive Order No. 6260, 12 U.S.C.A. § 95a, which prohibited the issue of gold coin as currency but permitted the acquisition of gold coin having a recognized special value to collectors of rare and unusual coins. The Secretary of the Treasury, on December 28, 1933, issued an order requiring the delivery to the United States of all gold coin other than that of recognized special value to collectors of rare and unusual coins. The Gold Reserve Act, approved January 30, 1934, 48 Stat. 337, prohibited the coinage and payment of gold coin by the United States. Under this Act and the regulations pursuant thereto, gold coin may only be acquired and held when such gold coin is of special recognized value to collectors of rare and unusual coins. These restrictions, generally, are still in full force and effect at this time.

In view of these undisputed facts, it is clear that the gold piece which is the basis of this lawsuit did not leave the Mint as regularly and lawfully issued money, or currency, therefore, the rule under the law merchant that title to money passes with delivery to a person who acquires it in good faith and for a valuable consideration, and which was adopted to insure the ready acceptability of money as currency in normal channels of trade, is not applicable here. Brown v. Perera, Sup., 176 N.Y.S. 215; Land Oberoesterreich v. Gude, 2 Cir., 86 F. 2d 621. The coin here involved was not, at any time, money or currency, but was a chattel, or an article of virtu. In re Gay's Gold, 80 U.S. 358, 20 L.Ed. 606; Moss v. Hancock, 2 Q.B. 3; Brown v. Perera, supra. It is virtually impossible, under the existing laws and careful methods in vogue at the Mint, for gold to be issued or released for circulation. It is a fair inference, from the proof in this case, that the Double Eagle here involved was taken out of the Mint in an unlawful manner; and, further, it is entirely reasonable to say, considering the customs and strict practices at the Mint, that it was abstracted by some one who substituted a similar coin for it before the coins were reduced to bullion. It is the Court's opinion this coin was abstracted by some one who had in mind that it would have a special value as a rare and unusual coin and that it could be disposed of from that standpoint. Since this gold piece was stolen or, through fraudulent breach of trust, taken from the Philadelphia Mint, the defendant, as the purchaser, took the same subject to the defects in its title and this is true, even though the property

was acquired in good fath, for a valuable consideration and without notice of any infirmity of title. He cannot maintain ownership in such property against one who has been deprived of it by theft or other illegal act. This principle of law is so well settled that it is only necessary to cite a few cases. Ventress v. Smith, 10 Pet. 161, 9 L.Ed. 382; Dows v. National Exchange Bank, 91 U.S. 618, 23 L.Ed. 214; In re Ketchum, D. C., 1 F. 815; Parham v. Riley 44 Tenn. 5; Godwin v. Taenzer, 122 Tenn. 101, 119 S.W. 1133; Cowan v. Thompson, 25 Tenn.App. 130, 152 S.W.2d 1036, certiorari denied by Sup.Ct.

It follows that title to the coin in litigation is in the plaintiff, United States of America, and plaintiff is entitled to its restoration.