**UNITED STATES FIDELITY & GUARANTY COMPANY, Inc., Plaintiff,**

v.

**Rita MOORE, Gale Kenneth Nipp, Loren "Red" Brooks and the United States of America, Roy O. Parker and W. S. Moore, Applicants for Intervention, Defendants.**

**No. EC 6759.**

United States District Court
N. D. Mississippi, E. D.

Dec. 4, 1969.

Charles H. McCraine, Jr., Houston, Miss., for plaintiff.

Cason Rankin, Tupelo, Miss., for intervenors.

William M. Dye, Jr., Oxford, Miss., for defendant the United States.

## MEMORANDUM OPINION

KEADY, Chief Judge.

On the night of May 29–30, 1967, the Shannon Branch of Peoples Bank & Trust Company at Shannon, Mississippi, was burglarized, its vault broken into and $22,269.54 feloniously taken. On the night of June 20–21, 1967, the West Branch of Holmes County Bank & Trust Company at West, Mississippi, was burglarized, its vault broken into and $49,398.22 feloniously taken. United States Fidelity and Guaranty Company, plaintiff, insured both banks against their burglary losses, paid the sums taken and received assignments from the two banks to all rights of action against persons liable for the burglaries and to the money or property thus unlawfully taken.

In this civil suit, plaintiff has sued defendants, Rita Moore (Moore), Gale Kenneth Nipp (Nipp), Loren "Red" Brooks (Brooks), and the United States for the recovery of cash money represented by certain coins and currency in the amount of $13,160.69 in the possession of the United States and which had been seized at the time law officers arrested Moore and Nipp on July 24,

1967.[1] Also involved in the suit is a 1967 Bonneville Pontiac which plaintiff alleges was purchased with funds stolen from the two banks.

Plaintiff alleged that the seized funds had been stolen by defendants at the time of the bank burglaries, and that it was entitled to recover such proceeds, as well as the automobile purchased by defendants with part of the stolen money. Moore, Nipp and Brooks answered, denying the allegations of the complaint, alleging that Brooks had no claim to the money or automobile in question, and that Moore and Nipp, as owners of both the cash and automobile seized by the law officers, had conveyed same to Roy O. Parker and W. S. Moore, pursuant to written bill of sale dated July 27, 1967, which was attached as an exhibit to the answer. Roy O. Parker and W. S. Moore (intervenors), who had been attorneys for Moore, Nipp and Brooks in the criminal prosecution, sought to intervene and to file a cross-claim to approximately $185 in coins, $12,625 in currency and the Pontiac automobile then in the possession of the United States.

The United States answered, stating that the cash funds in question had been seized by law officers at the time of the arrest of Moore and Nipp and were taken from the Pontiac automobile in which they had just been riding and also from their persons; that all of the funds so taken had been introduced in evidence on the prosecution of Moore, Nipp and Brooks in connection with the two bank burglaries. The United States also set up that Moore, Nipp and Brooks, who had been convicted on September 29, 1967, on criminal charges, had appealed their convictions and moved the court to stay all proceedings until their appeal was decided, which was done. The government then interpleaded the various monies and automobile in question as they (excepting the automobile) were still in the custody of the court as government exhibits introduced at the criminal trial. Thereafter, intervenors were allowed to amend their cross-claim to assert that the assignment to them of defendants' (Moore and Nipp) interest in the money and automobile was actually made on September 27, 1967, which was during the course of the criminal prosecution, rather than on July 27, 1967, as first stated, and the consideration was for legal services rendered in connection with the trial then in progress.[2]

On September 22, 1969, the Court of Appeals for the Fifth Circuit affirmed the convictions of Moore and Nipp for burglarizing Peoples Bank & Trust Company of Tupelo, Shannon Branch, as set forth in Count II of the indictment, and also for conspiracy to commit burglary against federally insured banks, including Holmes County Bank & Trust Company, West Branch, as set forth in Count I of the indictment. The conviction of Brooks, who was indicted only on the conspiracy charge, as set forth in Count I of the indictment, was reversed and he was discharged. Brooks v. United States of America, 416 F.2d 1044 (5 Cir. 1969).

Plaintiff has now moved for summary judgment in its favor upon supporting affidavits and offering the transcript of evidence on the criminal trial. Intervenors resist said motion by affidavits. The matter is now before the court for decision upon summary judgment.

 Summary judgment may be granted only when the pleadings, affi-

1. Brooks had been arrested earlier on July 19, 1967. On that same date all three defendants were indicted on the bank-related criminal charges herein discussed.

2. By subsequent agreement and proceedings, the United States has delivered into the custody of this court in this case the U. S. coins and currency in the approximate sum of $12,230. All unknown claimants have been duly cited to appear, the Pontiac automobile has been sold by the United States Marshal for $1,500 cash, against which the court has allowed $249.18 expenses, the balance being paid into the registry of the court; and the United States has been finally discharged as a party interested.

davits and other materials properly before the court show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[3] Affidavits must be sworn to, must be made on personal knowledge and must contain facts that would be admissible in evidence if testified to at trial.[4]

It is to be noted that defendants Moore and Nipp have failed to submit any affidavits or evidentiary material tending to show that the funds and automobile seized by the law officers had no connection with funds burglariously taken from the two banks. Affidavits submitted by intervenors, however, recite that Moore and Nipp have at all times maintained to intervenors that they were innocent of burglarizing the banks or of conspiring to commit burglary, and that the money and car in question were not the proceeds of criminal activity.[5]

■■ Obviously statements of what was told to the intervenors by Moore and Nipp are hearsay and would be inadmissible. This does not at all comply with Rule 56(e), F.R.Civ.P.,[6] requiring affidavits to "be made on personal knowledge". To this extent, the court may not consider intervenors' affidavits on motion for summary judgment. Maddox v. Aetna Cas. & Surety Co., 259 F.2d 51 (5 Cir. 1958); De Pinto v. Provident Security Life Ins. Co., 374 F.2d 50 (9 Cir. 1967). The remainder of intervenors' affidavits that the assignment was taken from Moore and Nipp in payment of an attorneys' fee, that their

clients had no other funds with which to pay them for legal services, and that they are bona fide purchasers for value of Moore and Nipp's interest in the car and money, are statements based upon affiants' personal knowledge, and, even though conclusory, might be admissible at trial and may be considered on this motion for summary judgment.

■■ Evidentiary materials offered by plaintiff in support of its motion consist of sworn affidavits of Harvey L. Campbell, Floyd White, Sheriff, James Bishop, FBI Agent, Ralph Gardner, search warrant, inventory of items seized pursuant to search warrant, certified copy of grand jury indictment and jury verdict of conviction and, by reference, the entire transcript of testimony in the criminal prosecution. The affidavits offered by plaintiff are in proper form and, having been made upon personal knowledge of affiants, would be admissible in evidence. It is error to contend that affidavits must be made on the personal knowledge only of a party to the litigation. The remainder of the documents, being the record of testimony or a part of the proceedings in the prior criminal prosecution are not testimonial in nature and do not qualify as affidavits. Nevertheless, this court may take judicial notice of those proceedings, inasmuch as the prior criminal case in this same court involved substantially the same parties or their privies as in the present case and the issues in both cases are so closely intertwined and related. Under these circumstances, it is proper, in accordance

---

3. Rule 56, F.R.Civ.P.; 6 Moore's Fed. Prac., § 56.04(1), p. 2057.

4. Rule 56(e), F.R.Civ.P.; 6 Moore's Fed. Prac., § 56.11(1–2), p. 2145.

5. The affidavit of one intervenor was to the effect that "they [Moore and Nipp] stated that this money was theirs that they had saved over a period of years * * *", and Moore "stated she had been in a highly successful business and had paid income tax on approximately $60,000 in recent years." The other intervenor's affidavit was to the effect that Moore and Nipp "stated to this af-

fiant that the money was a joint effort on the part of a business operated by Moore and an invention sold by defendant Nipp." At the criminal trial, FBI agents testified that Nipp told them that the money found in the trunk of the Pontiac automobile did not belong to him (R. 485, 556).

6. Rule 56(e) reads in part as follows:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

with well-established federal practice, for a federal court to take judicial notice of its own record in a prior criminal case.[7] The application of this rule is particularly appropriate in the case sub judice because intervenors are the same attorneys who represented Moore and Nipp in the criminal prosecution and had full opportunity for cross-examining any person who testified adversely to defendants' interests. Even though a contrary state rule might preclude application of judicial notice,[8] this court will follow the federal rule which is in favor of admissibility of evidence.[9] That conclusion is especially fitting since the present suit, ancillary to the prior criminal action, has "direct relation to property or assets actually or constructively drawn into the court's possession or control" by the former action, Fulton National Bank v. Hozier, 267 U.S. 276, 278, 280, 45 S.Ct. 261, 69 L.Ed. 609 (1929), and ancillary jurisdiction here exists, irrespective of the citizenship of the parties, to determine all questions affecting the title to the impounded property.[10]

Having ascertained what evidence is before the court, we shall now determine whether the affidavits raise a genuine issue as to any material fact.

Plaintiff argues that it is entitled to summary judgment because the verdicts of guilty in the prior criminal cases are conclusive as to the ownership of the money and the automobile in question. Intervenors assert in reponse that they took an assignment of defendants' interest in both money and car in good faith and without notice of any defect in defendants' title, and that since the assignment took place before the conviction, a good title passed to intervenors from defendants, and plaintiff cannot now attack intervenors' title to either the money or the car.

While it is true that an ackowledged thief can pass to a bona fide purchaser without notice good title to cash or negotiable instruments,[11] and probably

---

7. Shuttleworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Soley v. Star & Herald Co., 390 F.2d 364 (5 Cir. 1968); Hardin v. Aetna Cas. & Surety Co., 384 F.2d 718 (5 Cir. 1967), cert. denied 391 U.S. 971, 88 S.Ct. 2047, 20 L.Ed.2d 886; 9 Wigmore On Evidence, 570 § 2579.

8. Bridgeman v. Bridgeman, 192 Miss. 800, 6 So.2d 608 (1942); but cf. McCandless v. Clark, 172 Miss. 315, 159 So. 542 (1935).

9. Rule 43(a), F.R.Civ.P., provides as follows:

"All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient methods prescribed in any of the statutes or rules to which reference is herein made."

In an equity case, United States v. Calif. Coop. Canneries, 279 U.S. 553, 49 S.Ct. 423, 73 L.Ed. 838 (1929), the Supreme Court judicially noted its own records. Similarly, in Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), it was held that the court may take judicial notice of and give effect to its own records, in another but interrelated proceeding.

10. Freeman v. Howe, 24 How. 450, 16 L.Ed. 749 (U.S.1860); Hunt Tool Co. v. Moore, 212 F.2d 685 (5 Cir. 1954); Barnett v. Mayes, 43 F.2d 521 (10 Cir. 1930); Oils v. Blankenship, 145 F.2d 354 (10 Cir. 1944), cert. denied 323 U.S. 803, 65 S.Ct. 562, 89 L.Ed. 641 (1945); I Barron & Holtzoff, pp. 93–95, Ch. 2, Ancillary Jurisdiction, § 23; 64 Harv.L. Rev. 968–970 (1951).

11. 40 Am.Jur. 747, Payment § 49; 36 Am.Jur. 460, Money § 6. The rule governing title to stolen cash and negotiable instruments is clearly contrary to that governing title to stolen chattels: 42 Am. Jur. 227, Property § 51; Gurley v. Phoenix Ins. Co., 233 Miss. 58, 101 So.2d 101, 71 A.L.R.2d 221 (1958). See United States v. Barnard, 72 F.Supp. 531 (W.D. Tenn.1947), in which the court held that a rare $20 gold piece was a chattel and not subject to the "cash" exception.

even a good title to an automobile lawfully purchased with stolen money,[12] intervenors here may not be considered bona fide purchasers without notice. At the time defendants made this assignment to intervenors as payment for legal services rendered, the money and car had been seized by federal law officers, and the cash money offered as an exhibit in the criminal prosecution. Intervenors could not close their eyes to those facts. Nor could they enter upon their professional employment by Moore and Nipp with any reasonable expectation that in the event of their clients' conviction on the criminal charges they would nevertheless be entitled to receive the fruits of the crime. Intervenors could not be oblivious to the large black cloud hovering over such interest, if any which defendants had to the money and automobile. The doctrine of lis pendens operates to deprive intervenors of any status of bona fide purchasers without notice.[13] Thus, intervenors stand in no better position than defendants.[14]

Intervenors next contend that Moore and Nipp's conviction in the prior criminal case is not admissible in this subsequent civil action, while plaintiff contends that the prior conviction is not only admissible but conclusive since it is an effort by defendants, after conviction, to keep the proceeds of the crime, citing the Fifth Circuit holding in Har-

din v. Aetna Casualty & Surety Co., 384 F.2d 718 (5 Cir. 1967), cert. denied 391 U.S. 971, 88 S.Ct. 2047, 20 L.Ed.2d 886. In that case Hardin had been convicted of stealing and transporting to Mexico money belonging to Rasdale Armored Car Service. In subsequent civil suits Rasdale's insurers recovered the money. Hardin lost his appeal when the Fifth Circuit held, per curiam, that:

> " * * * [W]hen one is convicted of a felony and subsequently attempts to benefit from the commission of his crime, that is, to keep the proceeds thereof, the record of his guilt makes it unnecessary to relitigate that issue." (at page 719).

The above statement was made in upholding a jury verdict in favor of the insurer, which had earlier unsuccessfully sought summary judgment. Despite this factual difference, there is ample reason for believing that *Hardin* holds that a prior conviction of crime is *conclusive* of the facts upon which it is based, when the criminal defendant (or his privies) in subsequent civil action, attempts to keep the proceeds of the crime.[15]

An earlier, oft-cited case to that precise effect, which was cited with approval by the Court in *Hardin*, is Eagle, Star and British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490 (1927), in which an arson conviction was held to be conclusive against the arsonist in his subsequent civil suit to

---

12. Kelley Kar Co. v. Maryland Cas. Co., 142 Cal.App.2d 263, 298 P.2d 590, 62 A.L.R.2d 533 (1956).

13. 34 Am.Jur. 362–3, Lis Pendens § 2; 54 C.J.S. Lis Pendens § 58, pp. 630–631; Wilkin v. Shell Oil Co., 197 F.2d 42 (10 Cir. 1952), cert. denied 344 U.S. 854, 73 S.Ct. 92, 97 L.Ed. 663.

14. Crossman v. Fontainebleau Hotel Corp., 273 F.2d 720 (5 Cir. 1959); 6 C.J.S. Assignments § 95, p. 1152.

15. Since the court's jurisdiction in the case sub judice is ancillary to the prior federal criminal action in *this* court, the *Erie* rule is not in force and Mississippi law, which, it appears, would exclude

all evidence of prior criminal convictions or acquittals [*Adams v. Sigman*, 89 Miss. 844, 43 So. 877 (1907); *Young v. Davis*, 174 Miss. 435, 164 So. 586 (1935); *Williams v. Cambridge Mutual Fire Ins. Co.*, 230 F.2d 293 (5 Cir. 1956); Bush, Criminal Convictions as Evidence in Civil Proceedings, 29 Miss.L.J. 276–285 (1958)], does not apply. Moreover, treating the record and conviction as having only prima facie, or mere evidential and not conclusive (collateral estoppel), effect upon the substantive rights of the parties, we deem any conflict between federal and state rules of evidence to be resolved in favor of admissibility by Rule 43 (a), F.R.Civ.P.

collect fire insurance on the building he stood convicted of burning.[16]

The *Hardin* case appears to be in full agreement with the reasoning of the *Heller* case and establishes as the law of this Circuit the rule that a conviction in a prior criminal case is conclusive, in a subsequent civil action, of the facts upon which the conviction was based. "This Court has followed the reasoning of *Heller* and the line of cases which reach the same conclusion and has held, even where the convicted person is a defendant, and not a plaintiff, in the civil suit, that when he attempts to benefit from the commission of his crime, the record of his guilt makes it unnecessary to relitigate that issue", wrote Circuit Judge Dyer in Breeland v. Security Ins. Co., (Cause No. 27843, Slip Opinion dated November 10, 1969).[17]

■ Even if, as many courts have held, the conviction is considered only prima facie evidence, plaintiff in the present case would be, nevertheless, entitled to summary judgment, because neither defendants nor intervenors have presented any admissible evidence, in the form of affidavits or otherwise, to rebut plaintiff's prima facie case.

■ Plaintiff's affidavits, taken in conjunction with the record in the prior criminal case, clearly establish the burglary of the two banks, the felonious taking from the bank vaults of large sums of money (R. p. 121), and the discovery of a large amount of money in the personal possession of Moore and Nipp shortly thereafter (R. pp. 267, 450). Both bank vaults had been opened by means of a cutting torch. As a matter of *fact*, this evidence stands uncontradicted, for defendants, who did not testify at the trial, have filed no proper affidavit to controvert this evidence. Gray v. Amerada Petroleum Corp., 145 F.2d 730 (5 Cir. 1944). Intervenors contend, however, that as a

---

16. The *Heller* case is the subject of annotations at 51 A.L.R. 490 and 18 A.L.R. 2d 1287 (1951). The latter annotation states, at p. 1289, as follows:

"The earlier cases justified the statement of a general rule to the effect that a judgment in a criminal case, whether of conviction or acquittal, was incompetent when offered in a civil case to prove the facts upon which it was based. The dissimilarity of parties, issues, procedures, etc., in short, the factors which prevented the application of such a judgment as res judicata, were offered as reasons for the rule of exclusion. * * * A large number of courts continue to apply the rule excluding a previous conviction offered, in a civil action, as evidence of the facts upon which it was based. * * *

"However, an increasing number of decisions have approved the admission of such evidence, reasoning that the safeguards afforded the accused under criminal procedure are greater than those in a civil action, so that he has no cause for complaint that an adverse decision arrived at under such restraints should be used against him, especially where it is admitted only as prima facie evidence, subject to rebuttal. * * *

"So far as is known, only one jurisdiction, Virginia, has admitted such a previous conviction as conclusive evidence, giving it in effect the force of an estoppel, and it may well be that even there this result will be reached only where the civil action is one in which the convicted criminal seeks to take advantage of a 'right' arising from the crime itself, as where the arsonist endeavors to collect the insurance upon the burned property. * * *

"The logical basis for admitting evidence of convictions seems to be the same regardless of the type of conviction or civil action involved, although the strong public policy rule against permitting one to profit by his own wrong may furnish a more compelling reason for abandoning the previous rule."
A good discussion of the strong public policy against allowing felons to reap financial profit from their crimes and a selection of cases in which courts and legislatures have unwisely allowed them to do so may be found in Hart & Sacks, The Legal Process, tentative edition, Cambridge, 1958, p. 79.

17. In *Breeland*, a diversity case in which the Court was required to apply the Louisiana rule on substantive questions such as res judicata and collateral estoppel, the Court concluded that the Louisiana rule was substantially in accord with the Fifth Circuit rule as announced in *Hardin*.

matter of *law,* the mere possession of a large amount of money shortly after a bank burglary is no proof that the money came from the bank unless: (1) the money can be identified by serial numbers or other identifiable marks, or (2) there is a plain showing of defendants' impecuniosity before the burglary and sudden affluence thereafter. Self v. United States, 249 F.2d 32 (5 Cir. 1957); 91 A.L.R.2d 1048. Evidence adduced at the criminal trial showed that the large amount of money found in the trunk of the Pontiac automobile,[18] and in defendant Moore's purse (R. p. 478) was partly wet and perforated by small burns (R. p. 532). A metallurgical expert testified that in his opinion the burns were caused by tiny drops of molten metal falling on the money from acetylene equipment of the type frequently used to cut into bank vaults, which was the same type of equipment found in possession of defendants, and that the wetness of the money was caused by water, which is customarily hosed into vaults during the cutting to prevent the contents from catching fire (R. p. 533). The burns and wet condition are sufficient identifiable "marks" to meet intervenors' test and make a prima facie

factual case that the money was stolen from the banks. As stated, there is no proper affidavit now before the court which denies it. Thus, the convictions are at least prima facie evidence that Moore and Nipp burglariously entered the banks, and the undisputed evidence identifying the currency and the circumstances of its possession by them—without any countervailing evidence to the contrary—adequately supports plaintiff's right to summary judgment as to the cash funds seized by law officers and introduced into evidence at the criminal trial.

■ A different result obtains as to the Pontaic automobile (or the proceeds derived from its sale), as plaintiff has failed to raise an issue of fact, by any sort of probative evidence, that Moore (or Nipp) purchased it with proceeds taken from the banks. Recitals contained in the indemnification agreement, which are relied on by plaintiff, do not constitute evidentiary material. Thus, summary judgment is refused as to this item, which is an issue that remains for plenary trial.

An Order shall this date be entered accordingly.

---

18. R. pp. 450, 556. (Note: Even though defendant Nipp denied the money was his, it was in Moore's car and thus in her possession.