### BURT et al. v. UNION CENT. LIFE INS. CO.

(Circuit Court of Appeals, Fifth Circuit. December 4, 1900.)

No. 864.

LIFE INSURANCE—CAUSE OF DEATH—EXECUTION FOR CRIME.

An action cannot be maintained on a policy of insurance on the life of a person who was convicted by a court of competent jurisdiction of a capital crime, and was executed pursuant to its sentence, although it is alleged that such conviction was erroneous, and the deceased in fact innocent. The policy contained no provision for forfeiture in the event of execution for crime. A policy which in express terms permitted such a recovery would be one in effect insuring against the risk of a miscarriage of justice, and void as against public policy; and, for the same reason, even if a policy can be construed to cover such a risk, because not in terms excluded, it is to that extent void and unenforceable.

McCormick, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Texas.

Gardner Ruggles, for plaintiffs in error.

Geo. F. Pendexter and Geo. E. Shelley, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This suit is on a life insurance policy, and is brought by S. M. Burt and H. R. Burt, citizens of Texas, against the Union Central Life Insurance Company, a corporation chartered under the laws of Ohio. The policy was issued by the defendant on August 1, 1894, for $5,000, on the life of William E. Burt, and was payable at his death to his wife, Anna M. Burt, if living, otherwise to the executors, administrators, or assigns of the insured, within 60 days after proof of death. The annual premiums for the policy were duly paid. The policy contained no provision for forfeiture in the event that the insured should be executed under sentence of the law. On September 10, 1895, Anna M. Burt and William E. Burt assigned in writing to the plaintiffs, to whom they were indebted, a one-half interest in the policy. Anna M. Burt died intestate on July 24, 1896. She left surviving her no descendants, and her husband, William E. Burt, became entitled to any interest she had in the policy. By assignment from William E. Burt, and

as his heirs and next of kin, the plaintiffs are the sole owners of the policy. William E. Burt was indicted for the murder of Anna M. Burt, in the district court of Travis county, Tex., and was tried on November 27, 1896. In addition to the plea of not guilty, he pleaded insanity. He was found guilty by the jury of murder in the first degree, and was by the court sentenced to be hanged; and on May 27, 1898, pursuant to the sentence, he was executed by the sheriff of Travis county, Tex. These facts are all alleged in the plaintiffs' petition. The petition then avers that the insured, William E. Burt, was in fact innocent of the crime of which he was convicted. To quote the petition as abridged by the plaintiffs' counsel, "Notwithstanding said conviction and sentence, said William E. Burt did not in fact commit said murder, nor participate therein, but that, if he did, his policy was not avoided thereby, because he was insane." The defendant demurred to the petition because it appeared therefrom that the insured died at the hands of the law, under judgment of a court of competent jurisdiction. The circuit court, Judge Maxey presiding, sustained the demurrer. The plaintiffs declining to amend the petition, the case was dismissed. In this court it is assigned that the circuit court erred in sustaining the demurrer.

The industry of counsel has been able to find but one case in which a suit was brought on a life insurance policy when the insured had been tried and executed for the commission of crime. That case is Society v. Bolland, 4 Bligh (N. R.) 194, 211, and it is better known and oftener cited as the "Fauntleroy Case." It was an action by assignees in bankruptcy to collect a policy of insurance on the life of one Fauntleroy. The policy was made payable to his administrators or assigns. Fauntleroy was convicted of forgery, then a capital offense, and was executed. The lord chancellor (Lyndhurst) delivered the opinion. After stating the case, he said:

"The question, under these circumstances, is this: Whether the assignees can recover against the insurance company the amount of this insurance; that is to say, whether a party effecting with an insurance company an insurance upon his life, and afterwards committing a capital felony, being tried, convicted, and finally executed,—whether, under such circumstances, the parties representing him and claiming under him can recover the sum insured in the policy so effected. I attended to the argument at the bar, in conjunction with the noble lord now present, and we have both come to the conclusion that the assignees cannot maintain this suit. It appears to me that this resolves itself into a very plain and simple consideration. Suppose that in the policy itself this risk had been insured against; that is, that the party insuring had agreed to pay a sum of money, year by year, upon condition that in the event of his committing a capital felony, and being tried, convicted, and executed for that felony, his assignees shall receive a certain sum of money; is it possible that such a contract could be sustained? Is it not void upon the plainest principles of public policy? Would not such a contract (if available) take away one of those restraints operating on the minds of men against the commission of crimes, namely, the interest we have in the welfare and prosperity of our connections? Now, if a policy of that description, with such a form of condition inserted in it in express terms, cannot, on the grounds of public policy, be sustained, how is it to be contended that in a policy expressed in such terms as the present, and after the events which have happened, we can sustain such a claim? Can we, considering the policy, give to it the effect of that insertion, which, if expressed in terms, would have rendered the policy, as far as that condition went, at least, altogether void?"

This case has been cited approvingly in many text-books on insurance, and by the supreme court of the United States. Ritter v. Insurance Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693. That it correctly states the law has never been questioned so far as we know. It is quoted and relied on by the learned counsel for both parties to this suit. It is conceded, however, that there is a material difference between the facts of that case and this. Here the petitioners aver that the insured was guiltless, although convicted and executed. They aver in another count that, if he actually killed his wife, he was insane when he committed the act, and that the defense of insanity was presented unsuccessfully at the trial. If the insured did commit the homicide while insane, he was not guilty of murder. The meaning of the petition, therefore, is that at the trial of Burt, the insured, there was a miscarriage of justice,— that he was unjustly convicted. It must be and is conceded as settled law that, if he had been rightfully convicted, his assignees could not recover on the policy, because, as was held in the Fauntleroy Case (stating the point most favorably for the plaintiffs in error), the policy would have been void if it had expressly provided for payment of the amount thereof on the just conviction and execution of the insured. Does a contract of insurance, having no special provision on the subject, cover the loss, when the insured is tried and condemned in, and executed by an order of, a court of competent jurisdiction, when he is in fact innocent of the crime with which he is charged? This precise question, we are advised by counsel, has never been decided. We will apply to the question the illustration used by the court in the Fauntleroy Case. Would the policy sued on have been valid if it had provided, in the event of the insured's being indicted, tried, convicted, and executed for murder, when in fact he was innocent, that the amount of the policy should be paid to his administrators or assigns? This condition would not be as encouraging to the insured, determined on crime, as that supposed by Lord Lyndhurst, but it would at least let him understand that the provision he had made by insurance for those connected with him would not be conclusively lost by his conviction and execution; that the beneficiaries would have a right of action on the policy, with chances of success, even if he was apprehended, convicted, and executed. It is well settled that no one can lawfully contract to do that which has a tendency to be injurious to the public or against the public good. Can there be a legal life insurance against the miscarriage of justice? Can contracts be based on the probability of judicial murder? If one policy so written be valid, the business of insuring against the fatal mistakes of juries and courts would be legitimate. The same principle could be applied, in a kind of accident insurance, to the miscarriage of justice in cases that led to convictions and punishments not capital. And in each suit to enforce such a policy the issue as to the fatal judicial mistake would be tried by another jury and court, not infallible. That juries and courts do make mistakes is unquestionable. It may be admitted that the history of criminal jurisprudence shows that innocent defendants have, in rare instances, by a

departure from proper rules of evidence, been convicted of murder and executed. Cases in which the juries, the courts, and the pardoning power are so at fault are so rare that they are not likely to be in the contemplation of parties making contracts of life insurance. The terms of the contract of life insurance, it seems, would exclude the idea, as in the case of suicide by the insured while sane, that death at the hands of the law was within the contemplation of the contracting parties. Ritter v. Insurance Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693. But, if parties make express contracts on the subject, could the courts lawfully enforce them? It is the policy of every state or organized society to uphold the dignity and integrity of its courts of justice. Such contracts would be speculations upon whether the courts would do justice. They would tend to encourage a want of confidence in the efficiency of the courts. They would tend to stir up litigation,—litigation that would reopen tried issues. They would impress the public with the belief that the results of trials of the gravest kind were so uncertain that the innocent could not escape condemnation by a jury and unjust judgment by the court, or obtain pardon of the executive. Such contracts would encourage litigation and bring reproach upon the state, its judiciary and executive, and would, we think, be against public policy and void. The policy of the law often permits, and even requires, for error, a new trial of a convicted defendant, but never after his execution. The principle that makes void a wagering contract as to a rise or fall in the price of goods in the markets (Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225) would make void, for stronger reasons, a contract based on the failure of courts and juries to perform their respective duties. Now, to apply the reasoning of Lord Lyndhurst in the Fauntleroy Case, if a policy with such a form of condition inserted in it in express terms cannot, on grounds of public policy, be sustained, a policy without such a condition cannot be enforced on the averment of facts which, if embraced in the written contract, would have made the policy to that extent void. In some cases it has been held that a trial and conviction or acquittal in a criminal case are conclusive as to the facts decided, when brought in question by the parties in a subsequent civil suit. Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. 437, 29 L. Ed. 684; Roberts v. State, 160 N. Y. 217, 224, 54 N. E. 678; People v. Petrea, 30 Hun, 106. But the authorities on this subject are conflicting. 1 Freem. Judgm. (4th Ed.) § 319, and cases there cited. The assignee takes the policy subject to all defenses and equities which attached to it in the hands of the assignor. Bliss, Ins. § 331. If the judgment of conviction against Burt is conclusive as to his guilt in this suit by the assignees of the policy, this case would be brought precisely within the principle decided in the Fauntleroy Case, for the averment in the petition of the conviction of Burt would avoid the effect of the allegation of his innocence. But we prefer to base our conclusion on the ground that a contract of life insurance, written to insure against a capital conviction in the established courts of competent jurisdiction in the event that such conviction is unjust and unwarranted by the evidence, is void,

as being against public policy. The judgment of the circuit court is affirmed.

McCORMICK, Circuit Judge. I cannot concur in the judgment of the court in this case. It seems to me that the case does not call in question in any manner, or come under the authority of or the reasoning in, the case of Society v. Bolland, 4 Bligh (N. R.) 194, 211. The action might very well have been brought in the common form on the policy of insurance, and left it to the defendant to raise by its answer the questions that are herein raised. The plaintiffs, being so advised, chose to raise the question as they have done in their petition. The petition implies, if it does not expressly announce, that if the insured was in fact guilty of murder, and his death occurred by the execution of the sentence against him for that crime, the proof of such facts would avoid the civil contract on which this action is brought. The holders of the policy, however, expressly allege that the assured did not commit the homicide charged against him, and that, if he did commit the homicide, he was in such condition of mental disorder as rendered him incapable at that time of committing murder. They allege that these pleas were presented on the trial of the indictment against the assured, and that on that trial, in a court of competent jurisdiction, the verdict and judgment were rendered against him, and sentence of death pronounced upon him and executed. The demurrer which was sustained in the circuit court must assume either that the death of the assured by a judicial sentence for crime, though in fact he was wholly innocent, and merely the victim of mistake or miscarriage of justice, avoids the policy, or that the judgment of conviction in the criminal case is not only admissible to prove both the sanity and the guilt of the accused, but that it is conclusive evidence of both. I fully concur with counsel for the plaintiffs in error that the first question has never been directly heretofore decided. It is certainly not decided in either the Fauntleroy Case or the Ritter Case. The first of those cases proceeds upon the admission or assumption that the assured was guilty of forgery, as charged, and for which he was executed; no question being made as to his mental condition. In the latter case the question of the assured's sanity was submitted to the jury in the civil suit, and on the evidence and under the charge of the court the jury found against the policy holder. While the elaborate argument in the opinion of the supreme court announcing the decision in the case does not show that, if the insanity of the assured had been shown, his suicide while in that condition would not have avoided the policy, it seems to me to strongly imply that it would not. It seems to me that the ruling of the circuit court cannot be sustained, except upon the second ground indicated above, and that the practical effect of the judgment of this court is to set aside a general rule, which has received immemorial recognition, to the effect that:

"A verdict and judgment in a criminal case, though admissible to establish the fact of the mere rendition of the judgment, cannot be given in evidence in a civil action to establish the facts on which it was rendered."

This is elementary. The reason of the rule, as expressed by Mr. Greenleaf, is:

"If the defendant was convicted, it may have been upon the evidence of the very plaintiff or party claiming the benefit in the civil action; and, if he was acquitted, it may have been by collusion with the prosecutor. But, beside this, and upon more general grounds, there is no mutuality. The parties are not the same. Neither are the rules of decision and the course of proceeding the same. The judgment of a court of competent jurisdiction, being a public transaction, rendered by public authority, is presumed to be faithfully recorded. It is, therefore, the only proper legal evidence of itself, and is conclusive evidence of the fact of the rendition of the judgment, and of all the legal consequences resulting from that fact, whoever may be parties to the suit in which it is offered in evidence. Thus, if one indicted for an assault and battery has been acquitted, and sues for malicious prosecution, the record of acquittal is evidence for the plaintiff to establish that fact, notwithstanding the parties are not the same; but if he were convicted of the offense, and then is sued in trespass for the assault, the record in the former case would not be evidence to establish the fact of the assault, for, as to matters involved in the issue, it is res inter alios acta." 1 Greenl. Ev. §§ 537, 538.

I am unable to see why public policy not only does not forbid, but seems to require, the courts of public justice, at the suit of proper parties, to make new inquiry as to the guilt of one who had been criminally charged and convicted of making an assault, should forbid the making of the inquiry sought to be made in this case, as to the real guilt of the assured in the matter for which he was charged, tried, and executed. It seems to me that the public interest and a sound public policy give stronger support to the general rule in a case like the present than in a suit for damages by one claiming to have been assaulted by a defendant who had been convicted therefor in a criminal prosecution. In the case of Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. 437, 29 L. Ed. 684, the parties to the civil suit were the same as the parties in the criminal action; the subject-matter was the same; the civil suit, if we may call it so, being for the recovery of a part of the punishment denounced by the penal statute against a crime charged in the criminal action. In that case the court say:

"In both proceedings, criminal and civil, the United States are the party on one side, and this claimant the party on the other. The judgment of acquittal in the criminal proceeding ascertained that the facts which were the basis of that proceeding, and are the basis of this one, and which are made by the statute the foundation of any punishment, personal or pecuniary, did not exist. This was ascertained once for all, between the United States and the claimant, in the criminal proceeding, so that the facts cannot be again litigated between them, as the basis of any statutory punishment denounced as a consequence of the existence of the facts."

In the case of Roberts v. State, 160 N. Y. 217, 54 N. E. 678, the parties in the civil action were the state of New York and the claimant; being the same as the parties in the criminal action. And it is not held, as I read the decision, that the judgment of conviction in the criminal action was conclusive as to the fact of the guilt of the accused. On the contrary, the opinion asserts:

"It was, therefore, incumbent upon him [the claimant] to establish that he was improperly convicted and imprisoned, and the amount of damages he had sustained by reason thereof. While a great volume of evidence was given upon the second question [the amount of damages], we find nothing in the

record which justified the board in finding that his conviction and imprisonment were improper, but, instead, the evidence upon which he was convicted and the judgment of conviction were introduced, both of which show that his conviction was proper,—the former presumptively, and the latter conclusively."

By this last word, "conclusively," the court could not have meant that no other evidence on that subject should have been received, because, if that had been their meaning, they would at once have held that the act of the legislature which authorized the proceeding was a void act; for this act recited upon its face that the claimant had been convicted and imprisoned for the alleged crime of burglary, and no question appears to have been made, either in the act or before the board of claims, that the conviction was not had in a court of competent jurisdiction.