# Richmond.

## EAGLE, STAR AND BRITISH DOMINIONS INSURANCE COMPANY v. MAX HELLER.

### November 17, 1927.

1. FIRE INSURANCE—*Action on Policy After Plaintiff had been Convicted of Burning the Stock of Goods Insured—Rejecting Pleas of Res Judicata and of Estoppel—Excluding Evidence of Plaintiff's Conviction of Burning the Stock of Goods—Case at Bar.*—The instant case was an action on a fire insurance policy on a stock of goods brought after plaintiff had been convicted under Code of 1919, section 4436, of wilfully burning the same stock of goods with intent to injure or defraud the insurer. Issue was joined upon defendant company's plea of the general issue. Among the grounds of defense filed by the defendant was that the fire was not accidental, but caused by the plaintiff with intent to defraud the defendant, and that the defendant had been convicted of burning the property insured with intent to defraud the defendant. In addition to the plea of the general issue the defendant filed a plea of *res judicata* which the court struck out, and a plea of estoppel averring the conviction of felony as an estoppel to the maintenance of the action, which the court rejected. The trial court by instructions to the jury held that the evidence of the conviction was irrelevant, immaterial and inadmissible upon the issues raised in the instant case.

   *Held:* That the trial court erred in rejecting these pleas and in excluding the evidence offered in support of the facts alleged therein and by its instructions.

2. RES JUDICATA—*Civil and Criminal Cases—Record in Criminal Case as Evidence in Civil Case.*—The record of a conviction, or of an acquittal, is not, according to a decided preponderance of authority, conclusive of the facts on which it is based in any civil action, nor, ordinarily, is it even evidence of such facts.

3. RES JUDICATA—*Civil and Criminal Cases—Record in Criminal Case as Evidence in Civil Case—Distinction between Acquittal and Conviction.*—It is perfectly logical to hold that if an offender has been acquitted in a criminal prosecution, that acquittal should not bind another party seeking civil redress for a personal injury arising out of the same occurrence, because the prosecution may have failed merely

because the guilt of the accused was not proved beyond any reason-able doubt. This reason, however, seems to fail where there is a conviction, and the fact of guilt (when it is also the precise fact in issue in the civil case) has been judicially determined, because the plaintiff in the civil action is only bound to prove that fact by a preponderance of the evidence.

4. FIRE INSURANCE—*Action on Policy After Plaintiff had been Convicted of Burning a Stock of Goods Insured—Case at Bar.*—The instant case was an action on a fire insurance policy on a stoc of goods brought after plaintiff had been convicted under Code of 1919, section 4436, of wilfully burning the same stock of goods with intent to injure the insurer. Plaintiff, while on the stand and averring his innocence and good faith, testified that he had been convicted of burning the insured property. The vital question at issue—that is, whether or not the plaintiff fraudulently destroyed, or connived at the destruction of, his own property for the purpose of securing the insurance—is identical with that which was heard and determined in the criminal prosecution against plaintiff. While not *res judicata* as against the insurance company, plaintiff should not be permitted to reopen the question and to avoid the legal effect of the judgment of conviction by a collateral attack upon it. If plaintiff could succeed in the instant action, he would thereby avoid the logical consequences of his conviction.

5. JUDGMENTS AND DECREES—*Collateral Attack—Judgment in Criminal Case.*—Like other judgments, a judgment in a criminal case cannot be attacked collaterally.

6. JUDGMENTS AND DECREES—*Collateral Attack—Sound or Unsound Decision.*—When the trial court has jurisdiction by law of the offense charged in an indictment, and of the party who is so charged, its judgments are, as a general rule, valid, and cannot be questioned for error or mistake in a collateral proceeding. In such cases, where the decision is within the court's jurisdiction, it is immaterial whether the decision is sound or unsound.

7. JUDGMENTS AND DECREES—*Collateral Attack—Action on Fire Insurance Policy After Plaintiff had been Convicted of Burning the Property with Intent to Defraud.*—In the instant case, an action on a fire insurance policy after accused had been convicted of burning the property with intent to defraud the insurer, accused sought to reopen the precise question which was decided in the criminal case, namely, whether or not he burnt the property with intent to defraud the insurer, and to avoid the legal consequences of his conviction.

*Held:* That the reason for the rule that judgments of courts of record having jurisdiction could not be collaterally attacked applied to the instant case.

8. FORMER ADJUDICATION OR RES ADJUDICATA—*Same Rules of Law,*

*Practice or Evidence Prevailing in Both Tribunals.*—In order that an adjudication in one court or tribunal should be regarded as *res judicata* upon the matters thereby determined when they come again in question in another tribunal, it is obviously not necessary that the same rules of law, practice or evidence should prevail in both tribunals. The attempt to impose any such limitation would defeat the whole purpose of the rule.

9.   JUDGMENTS AND DECREES—*Distinction between Direct and Collateral Attack.*—Any proceeding provided by law for the purpose of avoiding or correcting a judgment is a direct attack, which will be successful upon showing error; while an attempt to do the same thing in any other proceeding is a collateral attack which will be successful only upon showing a want of power.

10.   FIRE INSURANCE—*Action by Plaintiff After He had been Convicted of Burning the Property Insured—Action for Tort—Case at Bar.*—The instant case was an action on a fire insurance policy brought after plaintiff had been convicted of burning the property in question. The plaintiff had committed a felony, and in the present action sought to recover the fruit of his own crime. This crime, by the terms of the contract upon which he sues, avoids the contract, for under the policy sued on the plaintiff cannot recover if he wilfully burnt his own property. So that the issues raised in this action on the policy are quite different from those generally raised by a plaintiff suing an alleged wrongdoer in tort.

11.   FIRE INSURANCE—*Action by Plaintiff who had been Convicted of Burning the Property Insured—Exception to the General Rule that Records in Criminal Cases are not Admissible in Evidence in Civil Cases Involving Substantially the same Issues—Case at Bar.*—The rule that records in criminal cases are not admissible in evidence in civil cases involving substantially the same issues is subject to an exception where a plaintiff in an action on a fire insurance policy has been previously convicted of burning the property insured with intent to defraud the insurer.

12.   FIRE INSURANCE—*Insured Burning Property with Intent to Injure or Defraud the Insurer—Recovery by Insured against Public Policy.*—It would be against public policy to write into a contract of fire insurance a provision that the assured might recover, even though convicted under section 4436 of the Code of 1919 of burning the property with intent to defraud the insurer.

13.   FIRE INSURANCE—*Insured Burning Property with Intent to Injure or Defraud the Insurer—Recovery by Insured against Public Policy.*—To permit a recovery under a policy of fire insurance by one who has been convicted of burning the property insured, would be to disregard the contract, be illogical, would discredit the administration of justice, defy public policy and shock the most unenlightened conscience.

14. FIRE INSURANCE—*Action on Policy After Plaintiff had been Convicted of Burning the Property with Intent to Defraud the Insurer—Admissibility of Conviction—Collateral Attack.*—The instant case was an action on a fire insurance policy where plaintiff had been previously convicted of burning the property with intent to defraud the insurer.

   *Held:* That the court erred in refusing to admit evidence of plaintiff's conviction; that, when admitted, the precise finding of fact, that the accused was criminally responsible for the fire, unquestionably incendiary, which destroyed his goods, is conclusive upon the plaintiff; that this judgment of a court of competent jurisdiction was a determination of that particular and decisive fact as against him; that this judgment cannot be attacked except upon the ground of fraud, perjury, collusion, or some other such ground of invalidity; and that when so admitted in evidence there could have been but one proper verdict, and that a verdict for the defendant.

15. ARGUMENTS OF COUNSEL—*Intemperate Argument.*—Trial courts should restrain counsel indulging in violent, vituperative and intemperate attacks upon litigants, and when they fail to do so verdicts induced thereby will be set aside on appeal.

Error to a judgment of the Circuit Court of Rockingham county in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*D. O. Dechert,* for the plaintiff in error.

*Chas. A. Hammer,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

This is a case in which a rigid adherence to a general rule and to some judicial expressions would be a reproach to the administration of justice. Max Heller has recovered under a fire insurance policy upon a stock of goods, after he had been convicted under the Virginia statute (Code, section 4436) of wilfully burning the same stock of goods with intent to injure the insurer. *Heller* v. *Commonwealth,* 137 Va. 782, 119 S. E. 69.

Issue was joined upon the defendant company's plea of the general issue. Among the several grounds of defense in the statement filed by the company are these:

"1. That the fire for the loss from which this suit is instituted was not accidental, but was caused by, or with the connivance of, the insured.

"2. That said fire was caused as aforesaid with intent to defraud the defendant and other insurance companies. * * *

"7. That defendant was heretofore convicted of the offense of burning the property insured by said policy with intent to defraud the defendant and other insurance companies, and was sentenced by the judgment of the court to undergo confinement in the State penitentiary, which judgment was not reversed or set aside, but said plaintiff has undergone such punishment for said offense."

This plea and these grounds of defense were sufficient to raise the vital issue here involved, but in addition thereto the defendant filed a plea of *res judicata* which the court, upon motion of the plaintiff, struck out, and thereafter defendant tendered a plea of estoppel, averring the conviction of felony as an estoppel to the maintenance of this action, which the court rejected when tendered.

[1] The trial court, in rejecting these pleas, in the exclusion of evidence offered in support of the same facts alleged therein, and by instructions to the jury, held that the evidence of the conviction was irrelevant, immaterial and inadmissible upon the issues so raised in this case.

In sustaining an objection to the evidence of the previous conviction, the learned trial judge said: "The reason of that, gentlemen of the jury, is that the court

holds that this man is not now bound by the verdict of the other jury.  It is a question for you to decide whether he burned that stock of goods, or, in effect, did it."

Attorney for the company (interposing):  "That is one of the questions here."

The court added:  "Yes, sir; that is one of the questions for this jury to decide.  So far as that is involved, it is an original question for the jury to decide on the evidence."

And then, by way of emphasis:  "That there may be no misunderstanding on the part of the jury of what I said a moment ago:  It is the law that if Max Heller, the plaintiff in this case, was a party to the burning of that stock of goods, that forfeits all of his right to the insurance.  There is no doubt about that.  But the verdict of the jury in the case in which he was tried on the criminal charge is not proper evidence before this jury. It is for this jury to determine whether he did that."

That there are numerous cases in which it has been unequivocally stated that records in criminal cases are not admissible evidence in civil cases involving substantially the same issues, is undoubtedly true.

[2] "The record of a conviction, or of an acquittal, is not, according to a decided preponderance of authority, conclusive of the facts on which it is based in any civil action, nor, ordinarily, is it even evidence of such facts," is the guarded statement in 2 Freeman on Judgments, section 653.

The same learned commentator thus expresses the reasons for the general rule (section 654):  "The chief reason for excluding the record of a criminal prosecution from evidence in a civil case is that the parties to the two proceedings are different.  One who has been damaged by some criminal act of another has a

claim for remuneration, independent of the right of the public to proceed against the offender, and to inflict the penalty prescribed by law.    This right to compensation in damages ought not to be, and is not, dependent on the success or failure of the prosecution conducted by the people.    If it were, the party most injured would be prejudiced by a proceeding to which he was not a party, and which he had no power to control.    A person convicted of any offense is not estopped by the conviction from disputing the facts on which it is based in a civil action, because his adversary in the civil action would not have been barred if the prosecution had terminated in an acquittal.    While the difference in parties and lack of mutuality are a logical and sufficient reason in most cases for this general rule, other reasons given are the different rules of evidence and procedure which prevail in civil and criminal cases and the differing degrees of proof required.''

[3] It is perfectly logical to hold in such cases that if the offender has been acquitted in the criminal prosecution, that acquittal should not bind another party who, for a personal injury arising out of the same occurrence, seeks redress in a civil action; and this because the prosecution may have failed merely because the guilt of the accused was not proved beyond any reasonable doubt.    As has been frequently said, the acquittal of one accused of crime is only a finding that his guilt has not been proved beyond a reasonable doubt.    This reason, however, seems to fail where there is a conviction, and the fact of guilt (when it is also the precise fact in issue in the civil case) has been judicially determined, because the plaintiff in the civil action is only bound to prove that fact by a preponderance of the evidence.    Therefore, as the greater includes the less,

we can see no logical reason, considering the question from this point of view, why the conviction should not be admissible, certainly as relevant evidence for the consideration of the jury. While such convictions have been held relevant, many courts, where the effort is made to set up the conviction in a criminal case, either as relevant and persuasive, or as *res judicata*, or as an estoppel, have held that the same rule of exclusion applies to convictions as to acquittals, the reason given being that the parties not being the same there is the consequent lack of mutuality. *Honaker* v. *Howe*, 19 Gratt. (60 Va.) 50; *Supervisors* v. *N. & W. Ry. Co.*, 119 Va. 787, 91 S. E. 124. It is certainly clear in such cases that the plaintiff who is seeking redress in the civil case for the injury, not having been a party to the criminal prosecution, is not bound by its result. We confess our inability to perceive, however, why the accused person himself should not be held either as bound or affected by the result of the prosecution, if adverse to him. He has had his day in court, with the opportunity to produce his witnesses, to examine and cross-examine the witnesses for the prosecution, and to appeal from the judgment. So that the chief reason for holding that the plaintiff in the civil case is not bound by the prosecution fails as to the defendant, who has once litigated the identical question and had it adversely decided, under conditions most favorable to himself—that is, in a prosecution in which he could not have been convicted unless the decisive fact, his guilt, had been shown beyond a reasonable doubt.

These views are not novel, even if contrary to the general trend of decision, because all of the precedents on the subject are not consistent with the general rule which Mr. Freeman has stated. There are, as he shows, exceptions, limitations and contrary decisions.

2 Freeman on Judgments (5th ed.), section 655; 1 Freeman on Judgments, section 319; 4 Jones Com. on Ev. (2nd ed.), section 1817 *et seq.*

Among the English decisions we find the case of *Rex* v. *Parish of St. Pancras*, Peake's N. P. Cas. 286. There was an indictment against the Parish of St. Pancras for not repairing one side of a road (the other side lying in Islington parish). Lord Kenyon said, that had there been an acquittal of St. Pancras parish, the record could not have been evidence for the Parish of Islington. "The reason why it would not have been evidence for them is because some other parties might have indicted them, and those parties could not be bound by this record. There are many cases where a record is evidence against a person, though it is not so for him." It is there held that the record of conviction of St. Pancras parish was conclusive evidence against the Parish of Islington. It is said, by way of caution, that if the Parish of Islington could show fraud, it would be different, but that unexplained the record of conviction was conclusive evidence against the Parish of Islington.

The question has been the subject of a number of annotations: 103 Am. St. Rep. 20; 11 L. R. A. (N. S.) 654; 31 L. R. A. (N. S.) 670.

The latest of these which we have seen is in 31 A. L. R. 261. As illustrations of what the annotator there calls the minority rule, these cases are pertinent:

In *Bankston* v. *Folks* (1886), 38 La. Ann. 267, it is held that an indictment and verdict convicting the defendant of shooting the plaintiff were admissible in an action for damages for the shooting, the court saying that while such evidence was not conclusive of the plaintiff's right to recover, it "was proper that the jury should consider the result of the criminal prosecu-

tion for an offense for the legal consequences of which damages were claimed from its perpetrator."

In *Anderson* v. *Anderson* (1826), 4 Me. (Greenleaf) 100, 16 Am. Dec. 237, a husband had been convicted of adultery, and it was held in an action for divorce for adultery brought by the wife, that this conviction was sufficient proof of the marriage of the parties and of the fact of adultery.

In *Randall* v. *Randall*, 4 Me. (Greenleaf) 326, there was a similar ruling.

In Pennsylvania it has been held that a record ordering a husband to pay his wife a certain sum a week for support under penalty of imprisonment for failure is admissible in evidence in an action by the husband for divorce for desertion, as "persuasive evidence" of things as they stood at the time of the former proceeding, but not conclusive. *Bauder's Appeal* (1885), 115 Pa. 480, 10 Atl. 41; *Van Dyke* v. *Van Dyke* (1890), 135 Pa. 459, 19 Atl. 1061; *Carey* v. *Carey* (1904), 25 Pa. Super. Ct. 223.

In *Hahn* v. *Bealor* (1890), 132 Pa. 242, 19 Atl. 74, the record of a prosecution and conviction of a husband on a charge of deserting his wife was held persuasive, but not conclusive evidence of the fact of desertion, to show a want of maintenance of or provision for the wife, which would deprive the husband of a tenancy by curtesy in her lands after her death.

In *Davis* v. *Nest* (1883), 6 Car. & P. (Eng.) 167 the conviction of a person of having goods in his possession in which he had no property because of the fact that the goods had been condemned, was held admissible in a civil suit by him to recover damages for entering his house and taking these goods, in proof of the fact that he had no title thereto and was therefore attempting to recover damages for the taking of property which did not belong to him.

In *Boyle* v. *Boyle* (1688), 3 Mod. 164, 87 Eng. Rep. 106, it was held that a conviction of bigamy in a criminal court was conclusive of the fact of marriage, in a libel for jactitation of marriage, brought in the spiritual court, against the woman alleged to have been the first wife of the complainant.

In *Maybee* v. *Avery* (1820), 18 Johns. (N. Y.) 352, an action for slander based on the charge that the plaintiff was a thief and had stolen defendant's hens, it was held that the record of conviction of the plaintiff of such stealing was admissible in evidence, and that it constituted *prima facie*, but not conclusive, proof of the act of stealing so as to justify the defendant's charge, the defendant not having been a witness on the criminal prosecution of the plaintiff. The court in reaching this conclusion avoided the general rule as to the effect of lack of mutuality, etc., by holding that exception should be made where, as in a criminal prosecution, the public is interested, in which case any person may avail himself of a conviction. In this connection, the court said: "It is undoubtedly a rule that, to give a verdict and judgment thereon in evidence, it must be upon the same point and between the same parties or privies. The reason why it must be between the same parties is that otherwise a man would be bound by a decision in which he was not at liberty to cross-examine the witnesses; and generally the benefit of the rule is mutual; and one who is not a party to the cause, and would not be bound by the verdict, if against him, cannot avail himself of it. One of the exceptions to the rule is that where the matter in dispute is a question of public right, in that case, all persons standing in the same situation as the parties are affected by it. It appears to me that a verdict on an indictment forms another exception, and upon the

same principle. The public is the party aggrieved, the prosecution is carried on through their functionaries, and any individual may, when necessary, avail himself of a conviction. The plaintiff cannot complain of this, for he had an opportunity to cross-examine the witnesses, to adduce his testimony, and to reverse the judgment if erroneous.''

In *Byk* v. *Enright, Police Commissioner*, 203 N. Y. Supp. 296, in an action to enjoin the police commissioner from interfering with certain slot machines of the plaintiffs, it was held that while a decision of a magistrate's court discharging plaintiffs from a charge of operating them as gambling devices is not *res judicata*, it is entitled to much weight, under the doctrine of *stare decisis*, in view of section 978 of the penal law (Consol. Laws, c. 40).

In *Holcomb* v. *Cornish* (1831), 8 Conn. 375, where one who has been convicted of the offense of profane cursing brought a civil action of trespass for assault and battery, and false imprisonment, and extortion of money, against the justice who prosecuted and convicted the plaintiff on his own personal knowledge of the alleged offense, it was held that the record of conviction which recited the then defendant's presence in court was conclusive evidence in the civil action that the plaintiff therein was present in the justice's court at the time of his conviction.

*In re Crippen*, L. R. (1911) Prob. (Eng.) 108, 80 L. J. Prob. N. S. 47, 104 L. T. N. S. 224, 27 Times L. R. 258, 55 Sol. Jo. 273, it was held that where a convicted felon, or the personal representative of a convicted murderer who has been executed, brings any civil proceedings to establish claims, or to enforce rights, which result to the felon, or to the convicted testator, from his own crime, the conviction is admis-

sible in evidence, not merely as proof of the conviction, but also as presumptive proof of the commission of the crime.    The direct and logical expression of Sir Samuel Evans, president, are worthy of repetition:    "Here the representative of a convicted felon claims to be entitled to administration of an estate because she claims to be entitled to the estate itself—the only claim to the estate being one which results from the felon's crime.

"In another court she might bring an action to recover the estate from the administrator whom I now appoint.

"It is exactly the same as the case of the felon himself making the claim or bringing the action.    Would not the fact of his conviction be evidence against him? Would it be right to treat it as *res inter alios acta*, and to say it was not admissible at all in a civil action brought by him?

"The complete maxim is *'res inter alios acta alteri nocere non debet.'*    There is no question of *'alteri nocere'* here.

"I think, rather, that the matter should be decided upon the following principle, which was laid down by the judges in the *Duchess of Kingston's Case* (2 Smith's Lead. Cas., 11th ed., 731): 'What has been said at the bar is certainly true, as a general principle, that a transaction between two parties, in judicial proceedings, ought not to be binding upon a third; for it would be unjust to bind any person who could not be admitted to make a defense, or to examine witnesses; or to appeal from a judgment he might think erroneous; and therefore the depositions of witnesses in another cause in proof of a fact, the verdict of a jury finding the fact, and the judgment of the court upon the facts found, although evidence against the parties, and all claiming under them, are not, in general, to be used to the prejudice of strangers.'

"In the present day, a person before he can be convicted is 'admitted to make a defense, to examine witnesses, and to appeal from a judgment he may think erroneous'—and it may be added, to give evidence in his own behalf.

"In these circumstances, I think the maxim, *'omnia praesumuntur rite esse acta'* ought to apply. In some cases, *e. g.*, in the case of a finding of a jury acting pursuant to a commission in lunacy, the presumption of law is that the verdict of the jury was well founded. I am aware that in such a case the state of mind, and not the commission of a particular act, is in question; but I see no reason why the analogy should not be followed in a criminal case.

"If it be that the rules of evidence ever were as contended for the executrix in this regard, I think, in the circumstances attending trials for crimes in these days, that they ought to be reconsidered and revised.

"In my opinion, where a convicted felon, or the personal representative of a convicted murderer who has been executed, brings any civil proceeding to establish claims, or to enforce rights, which result to the felon, or to the convicted testator from his own crime, the conviction is admissible in evidence, not merely as proof of the conviction, but also as presumptive proof of the commission of the crime."

Lord Romilly, M. R., reached a similar conclusion as to the verdict of a coroner's jury in 1858, which is expressed in *Prince of Wales, &c., Association* v. *Palmer,* 25 Beavan 605.

In *Mash* v. *Darley* (1914), 1 K. B. 1, the *Crippen Case* is approved, and on a prosecution for bastardy proof of the defendant's previous conviction for carnal intercourse with the complainant was received in corroboration of complainant's evidence, the statute under

which the defendant was being prosecuted requiring that the complainant in such case should be corroborated. The court held that the previous conviction was admissible in evidence as presumptive proof of the commission of the crime of which the accused had already been convicted.

*Sheibley* v. *Fales*, 81 Neb. 795, 116 N. W. 1035, was an action for libel. Fales had charged Sheibley with being a defaulter as a county officer, and a previous judgment against Sheibley in another action by the county against him was admitted, on the theory that the defendant, Fales, in the libel case, being a resident taxpayer, was privy to the other suit. It was held, on this ground, that the previous judgment could be introduced as proof of the facts it established as between Sheibley and the county. 2 Wigmore on Evidence (2d ed.), section 1346.

Most courts now admit judgments committing a lunatic, as evidence in subsequent cases involving property controversies where his mental condition is relevant to the issue. Wigmore on Evidence (2d ed.), section 1671.

In *Thompson* v. *Whitman* (1874), 18 Wall. (U. S.) 469, 21 L. Ed. 897, an action of trespass for the seizure of a sloop by a sheriff, who justified on the ground that the crew of the vessel were engaged in unlawfully raking for oysters and clams, whereby the vessel became subject to forfeiture, it was held that the record of a conviction of the offense, rendered before a justice of the peace in the State in which the seizure was made, was not conclusive, but only *prima facie*, evidence of the facts stated therein, which, although jurisdictional, could be contradicted.

In *Supulver* v. *Gilchrist & Dawson* (1922), 28 N. M. 339, 211 Pac. 595, it was held that a conviction of

larceny conclusively established the ownership or right of property as between the thief and the one to whom the property was restored, by virtue of a statutory provision to the effect that upon conviction of the offender the stolen property shall be returned to the owner, so as to preclude the convicted person maintaining an action to recover the same. In other words, that the conviction established the essential fact which established the right of property as between the accused and the owner, as charged in the indictment.

In the case of *Jenkins* v. *Atlantic Coast Line R. Co.,* 89 S. C. 412, 71 S. E. 1010, a passenger claiming to be injured, sued the Columbia, Newberry and Laurens Railroad Company to recover damages resulting from the injury. The case being tried on the merits, there was a judgment in favor of the company. Thereafter the plaintiff brought another action in another county against the Atlantic Coast Line Railroad Company, the lessee and operator of the line, for the same cause of action. In holding that the first judgment was a bar to the second action, although the parties were not the same, the court said: "* * the true ground upon which a former judgment, in a case like this, should be allowed to operate as a bar to a second action is not *res judicata*, or technical estoppel, because the parties are not the same, and there is no such privity between them as is necessary for the application of that doctrine; but that in such cases, on grounds of public policy, the principle of estoppel should be extended, so as to embrace within the estoppel of a judgment persons who are not, strictly speaking, either parties or privies. It is rested upon the wholesome principle which allows every litigant one opportunity to try his case on the merits, but limits him, in the interest of the public, to one such opportunity."

Under facts substantially similar, in *Alfred Anderson v. West Chicago Street R. Co.*, 200 Ill. 329, 65 N. E. 717, it was held that a judgment in favor of a lessor railroad company is *res judicata* as against the lessee railroad company, upon the ground that they occupied the relation of principal and agent with respect to the negligence charged.

There is also a line of cases to the effect that where a party, against whom a criminal prosecution has resulted in a judgment, introduces such judgment in evidence in a civil action, it may be considered as evidence of facts on which it was based.

In *Moses* v. *Bradley* (1838), 3 Whart. (Pa.) 272, the court said: "If testimony is introduced purposely, or comes out unexpectedly, from a party's witnesses, it is still testimony, and open to consideration in every point of view; and this record, introduced by the party for one purpose, became evidence for every purpose; and he who introduced it could not say it was not true." 31 A. L. R. 277, note.

So also, in *Porter* v. *Seiler* (1854), 23 Pa. 424, 62 Am. Dec. 341, an action to recover for a personal injury inflicted by the defendant upon plaintiff during an assault, it was held that the record of criminal proceedings against the defendant, wherein he was convicted of the assault in question, but acquitted of an assault and battery with intent to kill, was evidence that an assault and battery were committed, when voluntarily given by the defendant himself, and admitted without objection by the plaintiff.

[4] In this case, it is observed, that the plaintiff, Heller, while on the stand and averring his innocence and good faith, testified that he had been convicted of burning the insured property.

In *Sawyer* v. *Norfolk*, 136 Va. 66, 116 S. E. 245, the

plaintiff, Sawyer, sued the city of Norfolk and a co-partnership trading as Puritan Restaurant for damages for a personal injury sustained by him in consequence of his being thrown to the ground while walking along one of the city streets, by being struck by a violently opened door of the restaurant, which extended approximately two feet over the sidewalk. The city demurred to the notice and filed a plea in bar of the action. After the city had been dismissed as a party to that case, the judge, upon hearing the evidence, rendered a judgment in favor of the Puritan Restaurant. The question presented to this court was between the city and the plaintiff, as to the effect, on the merits of the case, of a judgment in favor of its co-defendant, the Puritan Restaurant, the court having held the plaintiff had failed to show that his injury was due to negligence. At page 69 (116 S. E. 245) it is said: "The precise effect of a judgment on the merits, in favor of a party charged with negligence, on the liability of a co-defendant, for the same act of negligence, appears never to have been raised in this jurisdiction. It is closely related to the question of *res adjudicata*, and is governed by the same principle. Where there has been litigation which has in fact determined the point in the controversy, and there has been a final judgment, the judgment is conclusive. Where the subject matter is identical and the evidence is of necessity the same, the question cannot be reopened. *Shumate* v. *Supervisors*, 84 Va. 574, 5 S. E. 570; *Miller* v. *Wills*, 95 Va. 337, 28 S. E. 337; *Case* v. *Beauregard*, 101 U. S. 688 (11 Otto), 25 L. Ed. 1005; *Wilson* v. *Deen*, 121 U. S. 534, 7 S. Ct. 1004, 30 L. Ed. 980; Freeman on Judgments (4th ed.), section 249; *Robbins* v. *Chicago* (4 Wall), 71 U. S. 657, 18 L. Ed. 427."

This rule is closely related to the one we are considering. The vital question—that is, whether or not the plaintiff, Heller, fraudulently destroyed, or connived at the destruction, of, his own property for the purpose of securing the insurance—is identical with that which was heard and determined in the criminal prosecution against Heller, and while not *res judicata* as against the insurance company, no sound reason is perceived why the plaintiff, Heller, should be permitted to reopen it and to avoid the legal effect of that judgment by such a collateral attack upon it. It is clear that if he can succeed in this action, he thereby avoids the logical consequences of his conviction.

[5] Like other judgments, a judgment in a criminal case cannot be attacked collaterally.

In *Clark* v. *Atlantic City* (C. C.), 180 Fed. 598, it is held that where one is found guilty and fined for a violation of a municipal ordinance, the judgment, so long as it remains undisturbed, is conclusive upon the accused, and he cannot recover the amount of the fine upon the ground that the ordinance is void as affecting interstate commerce.

In *Holloman* v. *Tifton*, 3 Ga. App. 293, 59 S. E. 828, this appears: The plaintiff sued the city of Tifton for the recovery of a fine which had been imposed upon him in the police court on a charge of illegally keeping intoxicating liquor. Upon his conviction he had the option of serving upon the chain gang or paying a fine of $300.00. He was forced to pay this fine over his protest. He alleged that the evidence on the trial disclosed that he did not have the liquor in the city of Tifton, but two miles away; but under a mistake of law, in that he believed the city had the power and jurisdiction to punish for offenses beyond the corporate limits, he paid the fine imposed. Under these allega-

tions, he prayed judgment against the city for the sum of $300.00.   The court said:   "If the allegations be true, the judgment of conviction was erroneous, and subject to be set aside on *certiorari;* but it was not void. The court had jurisdiction to try for the offense charged, and there being no exception regularly taken to the judgment rendered, the defendant was concluded by it as to his guilt of the offense charged."

In *Gunning System* v. *Buffalo* (C. C.), 157 Fed. 249, a judgment of a State court upholding an ordinance prohibiting the erection of certain kinds of bill boards as a nuisance within the meaning of the ordinance was, in a subsequent suit in the Federal courts to enjoin the removal of the boards, held *res judicata* as to the validity of the ordinance and a bar to the suit to restrain the removal.

In *Roberts* v. *State*, 160 N. Y. 217, 54 N. E. 678, it appeared that the plaintiff had been convicted of burglary and pardoned, and was authorized by the legislature to present a claim to the State Board of Claims for damages sustained by reason of his conviction, and it was held that so long as the judgment of conviction remained undisturbed, it was conclusive upon the question, whether the conviction was proper, and defeated the claim of the accused for damages.

In *Adams Express Co.* v. *Bradley*, 179 Ky. 238, 200 S. W. 340, a bill was filed to enjoin the sheriff from collecting certain judgments against the express company for fines imposed for violations of a statute prohibiting the delivery of spirituous liquors on the day of a primary election.   The grounds urged for relief were that the statute was inapplicable to express companies, had been misconstrued, that the delivery to the consignees was by the consignors, at the place

of origin of the shipments, and that the judgments
were void.   It was held that the judgments, even if
erroneous, were not void, and that the attack was
collateral and could not be sustained.   15 R. C. L.,
section 347, page 871; 21 Ann. Cas., page 1190.

The Supreme Court of the United States has in-
flexibly adhered to this doctrine in *habeas corpus* cases.

[6] It is held in the case of *Ex parte Bigelow*, 113
U. S. 328, 5 Sup. Ct. 542, 28 L. Ed. 1005, that when
the trial court has jurisdiction by law of the offense
charged in an indictment, and of the party who is so
charged, its judgments are, as a general rule, valid, and
cannot be questioned for error or mistake in a collateral
proceeding.   In such cases, where the decision is
within the court's jurisdiction, it is immaterial whether
the decision is sound or unsound.

So also in *In re Eckart*, 166 U. S. 481, 17 S. Ct. 638,
41 L. Ed. 1085, which was a petition for a writ of
*habeas corpus*, it is held that judgments in criminal
cases cannot be collaterally attacked.   The court
repeats what was said in the *Bigelow Case*, which is so
clearly applicable to this case:   "The trial court had
jurisdiction of the offense described in the indictment
on which the prisoner was tried.   It had jurisdiction
of the prisoner, who was properly brought before the
court.   It had jurisdiction to hear the charge and the
evidence against the prisoner.   It had jurisdiction to
hear and decide upon the defenses offered by him.
The matter now presented was one of those defenses.
Whether it was a sufficient defense was a matter of law
on which that court must pass so far as it was purely
a question of law, and on which the jury, under the
instructions of the court, must pass, if we can suppose
any of the facts were such as required submission to
the jury.   If the question had been one of former

acquittal, a much stronger case than this, the court would have had jurisdiction to decide upon the record whether there had been a former acquittal for the same offense, and if the identity of the offense were in dispute it might be necessary, on such a plea, to submit that question to the jury on the issue raised by the plea. The same principles would apply to a plea of a former conviction. Clearly, in these cases the court not only has jurisdiction to try and decide the question raised, but it is its imperative duty to do so. If the court makes a mistake on such trial it is error which may be corrected by the usual modes of correcting such errors, but that the court had jurisdiction to decide upon the matter raised by the plea, both as matter of law and of fact, cannot be doubted."

[7] In this case the accused seeks to reopen the precise question which was decided in the criminal case, and to avoid the legal consequences of his conviction, and the reason for the rule that judgments of courts of record having jurisdiction cannot be collaterally attacked applies.

[8] In discussing the effect of judgments as estoppels, Mr. Freeman (Freeman on Judgments, section 641) has this clear expression: "In order that an adjudication in one court or tribunal should be regarded as *res judicata* upon the matters thereby determined when they come again in question in another tribunal, it is obviously not necessary that the same rules of law, practice or evidence should prevail in both tribunals. The attempt to impose any such limitation would defeat the whole purpose of the rule. As we have elsewhere shown, the basis of the doctrine is the policy and necessity of preventing continuous litigation over the same matter to the great vexation of the parties and the obstruction of the judicial machinery, and not the

assumption that the judgment is a legally or ethically correct determination of the rights of the parties. All that is essential, therefore, is that a party should have been given one opportunity for the judicial determination of an issue by a tribunal having the requisite authority, and proceeding in a manner recognized as due process of law.''

There seems to us no doubt that this is in effect a collateral attack upon the former judgment.

[9] In Van Fleet on Collateral Attack, section 3, the distinction between a direct and a collateral attack is thus clearly drawn: "Any proceeding provided by law for the purpose of avoiding or correcting a judgment is a direct attack, which will be successful upon showing error; while an attempt to do the same thing in any other proceeding is a collateral attack which will be successful only upon showing a want of power."

While the judgment in the criminal case is not *res judicata* as to the company, and while it does not operate technically as an estoppel on the plaintiff, because of lack of mutuality, the insurance company not being a party thereto, nevertheless, lest the reasons for the rule be overlooked, it should be remembered that the plaintiff in error, Heller, was a party to the criminal case; that he there had the fullest opportunity to make all of his defenses; that the identical question which he has reopened in this case was solemnly adjudicated in that case; and that it was there found beyond a reasonable doubt that he had burned his property for the purpose of collecting the insurance from this insurance company. Therefore, he should not be permitted again to raise that question by this collateral attack upon that judgment, and thus to avoid its legal and logical consequences.

In actions for malicious prosecution, as well as in

all other civil actions, where the fact of its rendition
is relevant to the issue, the previous judgment in the
criminal case is, for obvious reasons, admissible to
prove such fact, and establishes all legal consequences
resulting therefrom.

In Stephens Evidence, Art. 40, we find this: "All
judgments whatever are conclusive proof, as against
all persons, of the existence of that state of things which
they actually effect, when the existence of the state of
things so affected is a fact in issue, or is, or is deemed
to be, relevant to the issue."

[10] The precedents and the rules of exclusion which
have been derived therefrom, which the trial court
followed, have generally arisen in cases where one
claiming to be injured by the criminal act of another
had brought a tort action against the alleged wrong-
doer for redress of that injury, most frequently in
actions for personal injury—assault and battery. This,
however, is not such a case. Here the plaintiff who
brings this action has committed the felony, and seeks
to recover the fruit of his own crime. This crime, by
the terms of the contract upon which he sues, avoids
the contract, for under the policy sued on the plaintiff
cannot recover if he wilfully burnt his own property.
So that the issues raised in this action on the policy
are quite different from those generally raised by a
plaintiff suing the alleged wrongdoer in tort. Here the
plaintiff must recover, if at all, upon his contract.
The defense here is set up against the wrongdoer plain-
tiff, who has been adjudged criminally responsible for
the fire, by the company defendant which had no
responsibility therefor. These circumstances make this
case exceptional and quite distinguishable from any of
those relied upon by Heller, the claimant. That he
can be permitted to suppress the record of his convic-

tion and so to evade its consequences is to ignore the axiom that the reason of the law is the life of the law. The criminal record proves conclusively the fact upon which his conviction is based, and that fact is that he feloniously burned his goods with intent to defraud the company.   This is not only a relevant but a decisive fact which he cannot be permitted to deny, because that precise question has already been judicially determined against him.

The rule of exclusion is a shield for the protection of those who have had no opportunity to assert their defense.   To apply it here would be to convert it into a sword in the hands of one who has had such an opportunity, to be used by him for the effectuation of the same fraud which has been established, condemned and punished in the criminal case.   If there be a rule which cannot stand the test of reason, it is a bad rule.

[11] We have gone thus far into the question, because we are of opinion that the cases which we have cited and the reasons we have indicated clearly bring this case within an exception to the general rule; but if this view should be questioned by some, we think there can be no doubt whatever that this case must and should be reversed for the reasons which we are about to indicate.

In *Burt* v. *Union Central Life Ins. Co.*, 187 U. S. 362, 47 L. Ed. 216, 23 Sup. Ct. 139; *Id.*, 44 C. C. A. 548, 105 Fed. 419, 59 L. R. A. 393, it was held that a policy of life insurance does not insure against the legal execution of the insured for crime, even though the assured may have been in fact innocent and unjustly executed.   Mr. Justice Brewer, who delivered the opinion of the court, after stating that there is nothing in the policy covering the contingency presented, says: "The question, therefore, is whether an ordinary life

policy containing no applicable special provisions is a binding contract to insure against a legal execution for crime.'' Referring to the fact that the plaintiffs there undertook to distinguish between a case where the insured was justly convicted and executed and those in which he is unjustly convicted, and relied upon the allegation that he was not in fact guilty, and that, if he was, he was insane, and therefore not responsible; and accepting, as he says, these suggestions as facilitating a just conclusion concerning the rights of the parties involved, he inquires, first, ''whether a policy of life insurance is a contract, binding the insurer to pay to the beneficiary the amount of the policy in case the insured is legally and justly executed for crime. In other words, is that a risk which enters into and becomes a part of the contract?'' Citing the case of *Amicable Society* v. *Holland*, decided by the House of Lords in 1830, 4 Bligh, N. R. 211, he quotes this from the Lord Chancellor: ''It appears to me that this resolves itself into a very plain and simple consideration. Suppose that in the policy itself this risk had been insured against; that is, that the party insuring had agreed to pay a sum of money year by year upon condition that, in the event of his committing a capital felony, and being tried, convicted and executed for that felony, his assignees shall receive a certain sum of money—is it possible that such a contract could be sustained? Is it not void upon the plainest principles of public policy? Would not such a contract (if available) take away one of those restraints operating on the minds of men against the commission of crimes—namely, the interest we have in the welfare and prosperity of our connections? Now, if a policy of that description, with such a form of condition inserted in it in express terms, cannot, on grounds of

public policy, be sustained, how is it to be contended that in a policy expressed in such terms as the present, and after events which have happened, that we can sustain such a claim? Can we, in considering this policy, give to it the effect of that insertion, which, if expressed in terms, would have rendered the policy, as far as that condition went, at least, altogether void?"

After some other citations of authority, the opinion in the *Burt Case* proceeds: "But the stress of the plaintiffs' contention rests on the allegation that the insured was unjustly convicted and executed; that he did not in fact commit the crime of murder or participate therein, and that if he did it was while he was insane and not responsible for his actions. It is urged that, according to the authorities heretofore cited, the risk which is not insured against is death as a punishment for crime; that if there be no crime, no wrong done by the insured, the mere fact of his death as the outcome of proceedings in a court of justice does not vitiate the contract of insurance unless there is some express stipulation therefor. It is said that the adjudication in the criminal case is not, as to these plaintiffs, conclusive of the insured's guilt; that they may show in this independent action facts which would satisfy a jury that the outcome of those legal proceedings was unjust because the insured did not participate in the crime, or, if he did, that he was legally irresponsible therefor by reason of insanity. It is not doubted that the criminal prosecution was an adjudication of the insured's guilt, his sanity and legal responsibility for the crime, but the principle of *res judicata* is that a judgment is conclusive only as between the parties and their privies, and these plaintiffs say they were not parties to the criminal action, and are not privies to either party thereto."

It is observed in passing, that the point was made in that case that the judgment and sentence of the criminal court against the insured were inadmissible as evidence, and that the court did not apparently consider the point as requiring any further discussion.

After observing that *res judicata* did not apply, this is said: "This action can be maintained only on the assumption that there was a failure of justice in the criminal case. It implies a miscarriage of justice. But can there be a contract of insurance against the miscarriage of justice? In the opinion of the court of appeals the question is thus stated and answered:

" 'Can there be a legal life insurance against the miscarriage of justice? Can contracts be based on the probability of judicial murder? If one policy so written be valid, the business of insuring against the fatal mistakes of juries and courts would be legitimate. The same principle could be applied, in a kind of accident insurance, to the miscarriage of justice in cases that led to convictions and punishments not capital. And in each suit to enforce such a policy the issue to the fatal judicial mistake would be tried by another jury and court not infallible. * * *

" 'It is the policy of every State or organized society to uphold the dignity and integrity of its courts of justice. Such contracts would be speculations upon whether the courts would do justice. They would tend to encourage a want of confidence in the efficiency of the courts. They would tend to stir up litigation— litigation that would reopen tried issues. They would impress the public with the belief that the results of trials of the gravest kind were so uncertain that the innocent could not escape condemnation by a jury and unjust judgment by the court, or obtain pardon of the executive. Such contracts would encourage litigation

and bring reproach upon the State, its judiciary and executive, and would, we think, be against public policy and void. The policy of the law often permits and even requires, for error, a new trial of a convicted defendant, but never after his execution.' "

Mr. Justice Brewer continues: "The views thus expressed commend themselves to our judgment. There is a wagering feature in such a stipulation which forbids its being incorporated into a policy of insurance, and, if it cannot be formally incorporated into the contract, its omission therefrom does not, by implication, give it life and validity.

"See to what any other conclusion would lead: Suppose beneficiaries at the time of the trial of the insured for murder were possessors, and the sole possessors, of a knowledge of facts that would establish his innocence. As good citizens it would be their duty to furnish that evidence and thus prevent a miscarriage of justice. As beneficiaries it would be their interest to withhold their evidence, and thus let an innocent man be punished. Can a contract be upheld which is not only a wager upon the result of criminal proceedings, but also tends to place before individuals an inducement to assist in bringing about such miscarriage of justice?"

The views and reasons therefor indicated in the *Burt Case* are repeated by the Supreme Court of the United States in *Northwestern Life Ins. Co.* v. *McCue*, 223 U. S. 234, 56 L. Ed. 419, 32 Sup. Ct. 220, 38 L. R. A. (N. S.) 57, and by this court in *Plunkett* v. *Supreme Conclave*, 105 Va. 643, 55 S. E. 9.

[12, 13] Under the present Virginia statute, Code, section 4288, there may be recovery under some circumstances on a life insurance policy when the insured has committed suicide or been executed; but the language we have quoted and the reasons expressed are

nevertheless applicable to this case. Certain it is that
the policy expressed in the common law and statutes of
this Commonwealth discourages and punishes arson.
This sound policy, perhaps because of modern conditions
and the almost universal habit of insuring property
against loss through accidental fires, has been empha-
sized by the Virginia statute (Code, section 4436),
specifically making it a felony wilfully to burn any
building or any goods or chattels which at the time are
insured against loss or damage by fire, with the intent
to injure the insurer, whether such person be the owner
of the property or not. Certainly, then, it would be
against public policy to write into a contract of fire
insurance a provision that the assured might recover,
even though convicted of the crime denounced by that
statute. There should be no question that such a
provision would be void. If, however, this recovery
should be sustained, it would be, in effect, insuring the
plaintiff against the consequences of violating that
statute. This mere statement is all that is necessary
under the facts of this case to carry conviction. To
permit a recovery under a policy of fire insurance by
one who has been convicted of burning the property
insured, would be to disregard the contract, be illogical,
would discredit the administration of justice, defy pub-
lic policy and shock the most unenlightened con-
science. To sustain such a judgment would be to
encourage and give support to the current thoughtless
and carping criticism of legal procedure, and to justify
the gibe that the administration of the law is the only
remaining legalized lottery.

[14] Our conclusion, then, under the facts of this
case, is that the court erred in refusing to admit evi-
dence of the conviction; that, when admitted, the pre-
cise finding of fact, that the accused was criminally
responsible for the fire, unquestionably incendiary,

which destroyed his goods, is conclusive upon the plaintiff, Heller; that this judgment of a court of competent jurisdiction was a determination of that particular and decisive fact as against him; that this judgment cannot be attacked except upon the ground of fraud, perjury, collusion, or some other such ground of invalidity; and that when so admitted in evidence there could have been but 'one proper verdict, and that a verdict for the defendant. We shall, therefore, reverse the judgment in favor of the plaintiff and enter judgment here in favor of the defendant.

[15] This, of course, disposes of the case here, but there is another question raised in the briefs to which we think it proper to allude. An exception is taken to certain violent and vituperative language of counsel for Heller before the jury. It may be that to this intemperate attack upon the defendant company the remarkable verdict of the jury is to be attributed, for it is against the weight of the evidence, irrespective of the previous conviction of Heller. We have frequently had occasion to allude to this bad habit of too many attorneys, who in the excitement of the contest ignore or forget that in a tribunal engaged in the investigation and determination of facts upon which the rights of litigants depend, passion, prejudice and vituperation have no proper place; that the privilege and highest duty of counsel should be to aid the court and the jury by accuracy, learning, reason and persuasion to interpret the evidence so as to ascertain the truth; and that violent denunciations are a hindrance and not an aid thereto which should not be permitted in a court of justice. The trial courts should firmly and unflinchingly restrain such indulgences. When they fail to do so and verdicts are induced thereby, they will and should be set aside.

*Reversed.*